CITY OF ST. LOUIS, Respondent, *v.* LEVI STERN *et al.*, Appellants.

### November 14, 1876.

1. A city ordinance, passed in pursuance of a charter authority, is not necessarily invalid because it omits some of the details of method or procedure mentioned in the charter.

2. It is competent for the General Assembly to invest the authorities of a municipal corporation with power to preserve the public health, and to prevent or abate nuisances; and where the subject-matter of an adjudication of nuisance by such authorities is a *primâ-facie* nuisance, or a nuisance *per se*, such adjudication is conclusive.

3. Trial by jury is not essential, on constitutional grounds, to a method of ascertaining the existence of a nuisance.

4. When a business officially declared to be a nuisance has been discontinued, the owner of the property used in such business is not entitled to compensation therefor as for property taken for public use.

APPEAL from St. Louis Court of Criminal Correction.
*Affirmed.*

*Jecko & Hospes,* for appellants, cited: Welsh *v.* Stowell, 2 Dougl. (Mich.) 332; Coe *v.* Schulz, 47 Barb. 64; Dill. on Mun. Corp., sec. 308; Yates *v.* City of Milwaukee, 10 Wall. 497; Underwood *v.* Green, 42 N. Y. 140; Mayor, etc., of Hudson *v.* Thorne, 7 Paige, 261; Wood's Law of Nuis., secs. 739–741, and notes; Rev. Ord. 1871, p. 69, sec. 1.

*Vernon W. Knapp,* for respondent, cited: Rev. Chart., art. 1, secs. 12, 13; Dill. on Mun. Corp. 209, 210, sec. 93, p. 451, sec. 361, p. 456, sec. 367; The Commonwealth *v.* Van Sickle, Bright. 69.

LEWIS, J., delivered the opinion of the court.

On March 9, 1876, the Board of Health of the city of St. Louis declared officially upon its record that the hog-pens of defendants, situated on the north side of Laclede Avenue, between Beaumont Street and Leffingwell Avenue, were a nuisance, and detrimental to the public health. Defendants were thereupon notified to show cause before the board, on March 16th, why the nuisance should not be discontinued or removed. Defendant Stern appeared before the board on the 16th, and was heard, whereupon the case was laid over for one week. On March 23d, the defendants failing to appear, several witnesses, "residents of the neighborhood, testified to the hog-pens being an almost unbearable nuisance," and the board adopted a resolution whereby the defendants were "ordered to abate the said nuisance by ceasing to carry on the business of keeping hogs in said locality, and removing said hog-pens outside of the jurisdiction of this board within five days after receiving due notification of this order." On May 18, 1876, the city attorney filed in the St. Louis Police Court a complaint against defendants, for violation of "An ordinance in revision of the ordinances of the city of St. Louis, and for the government of said city, chapter 12, article 1, sections 12 and 13, approved March 31st, 1871." They were thus charged with having failed, neglected, and refused, for more than five days, to comply with the order of the Board of Health above mentioned. Defendants were tried before a jury in the Police Court, found guilty, and fined $20 and costs. They appealed to the Court of Criminal Correction, where they were again convicted, and fined $50 and costs.

Exceptions were saved to a number of rulings in the courts below, concerning the service of process and the admissibility of testimony; but all such are here waived by counsel, except in so far as they may bear upon two questions, to which our attention will be confined: 1. Is the ordinance under which the defendants were convicted

VOL. III — 4

valid? 2. Does its true interpretation, if valid, justify the conviction?

The material provisions of the ordinance in question are as follows:

"It shall be the duty of the Board of Health, on complaint being made to it, or whenever it shall deem any trade, business, or profession, carried on by any person or persons, or corporations, in the city of St. Louis, detrimental to the public health, to notify such person or persons, or corporations, to show cause before the Board of Health, at a time and place to be specified in such notice, why the same should not be discontinued or removed. * * * Upon the summoning of the parties to appear before the Board of Health, cause may be shown by affidavit, or the parties may appear in their own person, or by attorney, and if, in the opinion of the Board of Health, no good and sufficient cause be shown why the said business, trade, or profession should not be discontinued or removed, the said board shall order the said parties to discontinue or remove the same within such time as the board may deem reasonable and necessary. * * *.

"Sec. 13. Any person or persons failing or refusing to obey such order of said Board of Health shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than twenty nor more than two hundred and fifty dollars; and such person or persons shall be subject to like fine for each and every day he, she, or they shall continue such business, trade, or profession after the expiration of the time specified in the order of the Board of Health for the removal or discontinuance of the same."

As to the validity of these provisions by city ordinance, it must first be determined whether the power to enact them was conferred in the municipal charter of St. Louis.

The Revised City Charter of 1870 declares, in article 3, that "the mayor and City Council shall have power, within the city, by ordinance not inconsistent with any law of the

State, * * * to make all needful regulations to secure the general health of the inhabitants; * * * to prevent or abate all nuisances on public or private property; * * * to regulate and prevent the carrying on of any business or factory, if detrimental to the public health. * * * To impose, collect, and enforce fines, forfeitures, and penalties for the breach of any city ordinance."

By article 9 the Board of Health is created, and is empowered to " have general supervision over the public health of said city; * * * to declare and abate nuisances in such manner as may be provided by ordinance; and to adopt such measures and make such orders for the cleansing or purifying of any place, or the abatement or removal of any nuisance, as they may deem proper or necessary."

Section 4 provides: " In order to effect the abatement of nuisances or removal of accumulated filth, the Board of Health shall have power, whenever, in their opinion, such nuisance or filth exists, and after officially so declared of record, to notify the owner or owners thereof to abate or remove the same, either by filling up, draining, cleaning, purifying, or removing the same, as the case may be, which notice shall be served upon the owner or agent having charge of such property in the same manner as writs of summons are required to be served in civil cases. If the owner who shall have been so served with notice shall for five days fail to comply with such order of the board, or fail to show good cause to said board why he cannot or ought not to comply with such order, for which purpose he shall be entitled to be heard before said board if he so request it, he shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined not exceeding five hundred dollars."

These provisions are manifestly ample to confer upon the municipal corporation all the power that the Legislature of the State could give it to adopt the ordinances under con-

sideration. Objection is here made that the ordinances omit some of the details of method or procedure which the charter provides. But it is not made clear why such details, being already directed in the charter, and thus fully provided for by law, could be made any more imperative by reënactment in the ordinance. It is not pretended that any of them were disregarded by the Board of Health, or other officers, in their action touching the subject-matter of this controversy.

Our first inquiry is thus reduced to the essential question whether it was competent for the General Assembly to invest the municipal authorities of St. Louis with the powers exercised by them in the present instance.

The plenary authority of the law-making power to provide for the preservation of the public health, and to protect the citizen in his natural right to the enjoyment of pure air, has too long been firmly fixed in our jurisprudence to require discussion here. The appellants contend, however, that in this instance the authority has been abused; that the powers conferred on the Board of Health are in derogation of the right of trial by jury; that they tend to deprive the citizen of his property without just compensation, and without due process of law. It is argued that the Board of Health could not, by official declaration, make that a nuisance which was not a nuisance, and that the question whether or not the hog-pens were a nuisance, or detrimental to the public health, was one of fact, to be tried by the jury in this cause; and that, therefore, the court erred in excluding testimony offered by defendants to show that no nuisance in fact existed.

The right of trial by jury, as a common-law or constitutional right, has never been held to preclude other modes provided by law for determining the existence of a nuisance, with a view to its abatement by the civil authorities. These modes have been various in different localities, both in England and America. No case is shown to us

wherein, the Legislature having prescribed a form for these inquiries, such form was held to be inoperative because at variance with the trial by jury. Where municipal corporations have been created without any specially defined powers relating to nuisances, it has sometimes been held that they could not by ordinance provide for their abatement otherwise than according to the course of the common law. But such adjudications have no influence upon the question now before us.

The right to compensation on account of private property taken for public uses is foreign to the subject of preventing or abating nuisances. A regulation which compels a man so to use his own as not to interfere with the rights of others does not, therefore, deprive him of his property; nor does it devote such property to any public use. As a member of the community he is considered, moreover, to be himself benefited by that which restrains him from committing injury upon the public at large. In the present case the defendants were not required to surrender the property upon which their pens were located. They were simply required to discontinue such a use of it as continually violated the natural and legal rights of others — rights fully as dear to them, and as much entitled to protection by the State, as any that the defendants could assert.

Appellants lay much stress upon their argument that the Board of Health could not, by any official action, make that a nuisance which was not one in fact. The remark may be true; but it has no force when applied to that which the law has, in one or more forms of utterance, already pronounced a nuisance. In *The Commonwealth* v. *Van Sickle*, Bright. 69, it was held that, upon common-law principles, a pig-sty in a populous city is a nuisance *per se*. This would be sufficient to bring the subject-matter of the present controversy within the general jurisdiction of the board under its expressed powers, so that the official declaration would amount to nothing more than a form of assum-

ing jurisdiction in the particular case. But a more emphatic utterance is found in a city ordinance which the defendants themselves introduced as evidence, as follows :

" Sec. 16. No distiller, butcher, stock-dealer, or other person shall collect or keep any cows or hogs in a pen, or otherwise confine any hog or hogs in the city, so as to create a nuisance." Ch. 12, art. 2.

This, in plain terms, forbids the keeping of hogs in a pen, without any reference to the possible effect. As to other modes of confinement the prohibition is conditioned upon the consequent creation of a nuisance.

The adoption of this ordinance is a manifest exercise of the charter power to " make all needful regulations to secure the general health of the inhabitants," and to " prevent or abate all nuisances on public or private property." Such municipal prohibitions, so warranted, have been uniformly sustained and enforced by the courts. Whatever, then, might be the effect of an official declaration with respect to a business or practice not specifically forbidden, or not understood to be a nuisance *per se*, it is apparent that in the present instance the board's declaration simply followed the law.

In cases where no such powers as are here shown were conferred on municipal corporations or health officers, and where the trade, practice, or alleged offensive matter was neither *per se* nor even *primâ facie* a nuisance, it has sometimes been held that the implicated party would be entitled, when on trial for the penal offense involved, to prove that no nuisance existed, nor anything detrimental to the public health or comfort. But, in cases presenting the distinctive features of the one before us, the adjudications are pretty uniformly to a contrary effect.

In *Kennedy* v. *Board of Health*, 2 Pa. St. 366, the board was by legislative enactment authorized " to cause all offensive or putrid substances, and all nuisances which have a tendency, *in their opinion*, to endanger the health of

the citizens, to be removed," etc. The property owner, upon being proceeded against, offered to prove the cause of the alleged nuisance. It was held that such proof could not be admitted, because its only tendency would be to show "that there was in reality no nuisance to be removed;" that, the board having already decided that the nuisance existed, the question could not be again tried. There was in the act a special provision that the fact of the nuisance should not be inquired into after the board's official action. But the principle of the decision, as applied to the St. Louis Charter, remains the same.

In *Green* v. *The Mayor*, etc., 6 Ga. 1, the corporate authorities were empowered by their charter to pass such laws and ordinances as they might consider fit and proper to remove nuisances "or causes of disease which might affect the citizens of Savannah, or in anywise injure their health." An ordinance was passed, under this authority, prohibiting the cultivation of rice within the corporate limits. It was held that this was in effect a conclusive adjudication that rice-growing was in fact injurious to the public health within the corporate jurisdiction.

The Supreme Court of Illinois decided, in *Roberts* v. *Ogle*, 30 Ill. 459, that "the Legislature has authority, under the Constitution, to confer on an incorporated town the power to declare what shall be nuisances, and to provide for their abatement;" that, under this power, "an ordinance declaring that swine running at large are nuisances," etc., is valid.

Other cases might be cited to like effect. It appears to be settled that, when the Legislature delegates to certain municipal agents a general power to provide for the preservation of the public health by the removal of nuisances, an adjudication by such agents upon the fact of nuisance existing within their local jurisdiction is conclusive; at least, in every case where the subject-matter comes within the classifications of *primâ-facie* nuisances and nuisances

*per se.* How far such an adjudication would be binding, if its object were not embraced in these classifications, need not be inquired of in the present case.

We are, therefore, of opinion that no constitutional objection can be maintained against the charter provisions and ordinances under consideration, and that no error here appears in the proceedings by which they were enforced. Judge GANTT concurring (Judge BAKEWELL not sitting), the judgment will be affirmed.