W. A. LITTLE, attorney-general, by J. H. LUMPKIN, and C. B. HUDSON, solicitor-general, *contra.*

---

DUNBAR & CO. *v.* THE CITY COUNCIL OF AUGUSTA.

1. It not being alleged in the declaration that the damaged grain condemned and destroyed by the municipal authorities of Augusta was not a nuisance or was not dangerous to the public health, that being the ground on which it was condemned and destroyed, no cause of action against the municipality was set out in the declaration.

2. The constitutional provision requiring compensation to be made for property taken or damaged for public purposes, does not apply to property rightly condemned and destroyed as a public nuisance because dangerous to health.

May 25, 1892.

Nuisance. Municipal corporation. Police power. Before Judge RONEY. Richmond superior court. October term, 1891.

WILLIAM K. MILLER, for plaintiffs.

JOHN S. DAVIDSON, for defendant.

BLECKLEY, Chief Justice.

Upon a close and careful examination of the petition, we are of opinion that it should be taken and construed all together as an attempt to set forth one and the same cause of action, and not as a declaration uniting two or more causes of action and attempting to set them forth severally in separate counts. It is manifest that but one grievance is complained of, and that the specific facts and circumstances alleged apply exclusively to it; the petition at the same time drawing certain legal conclusions in favor of the plaintiffs, which conclusions are sought to be stated and used as if they themselves were a part of the facts instead of being deductions therefrom. The material substance of the petition may be fairly stated thus: The plaintiffs having in the city of Augusta a warehouse and a large quantity of grain stored therein, much of the grain was wet and damaged by a three days flood in the Savannah river, which commenced on September 10th. Whilst the plaintiffs were engaged successfully in separating the dry grain from the wet in order to dry the wet and save it from total loss as best they could, they received several notices the last of which, dated the 19th of September, was from the sanitary inspector, and informed them that their damaged grain and other articles must be removed, and requesting them to have it removed to the trash pile where it would be burnt at once. This notice purported to be given by order of the board of health. The plaintiffs refused to comply, on the ground that their property, although damaged by the flood, was still of considerable value and there was no reason why they should be required to throw it away, some being dry and some wet, they having received no notice of time and place of hearing by the board of health when the order was given. In consequence of this refusal they were brought before the recorder's court of Augusta on

September 21st, and were there tried for the alleged violation of a certain ordinance declaring that the storage of damaged or unsound corn, or other grain, in large quantities, is forbidden under the penalty of not exceeding one thousand dollars, or imprisonment not exceeding six months, either or both in the discretion of the recorder. The president of the board of health was in attendance at the recorder's court, and insisted that for the public health and welfare it was best that the order of the board should be carried out. The recorder decided that the plaintiffs must do this, and passed an order that they remove all damaged grain to the city trash pile or outside of the city limits within three days, or incur the penalty of fifty dollars for every additional twelve hours the grain was allowed to remain unmoved. Thereupon the plaintiffs, as assistance to them in complying with the decision of the recorder, requested that the city carts be sent immediately to their warehouse to remove the grain, which was done. The carts carried the grain to the city trash pile where it was burnt and destroyed by the city officials. Against all this the plaintiffs protested, and to none of it did they assent. The property thus taken and destroyed was over eight thousand dollars in value, and the cost to the plaintiffs of drayage, etc., to assist in the removal of the grain, was at least one thousand dollars, the total damage being $9,843.33, none of which has been paid. The petition recites the provision of the constitution declaring that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid. It alleges that the plaintiffs' property was taken and destroyed for public purposes; that it was not lawfully adjudicated to be a nuisance, or that it had damaged any of the citizens; and that there was no ordinance of the city declaring the retaining and drying of wet grain to be a nuisance.

It also alleged that if the plaintiffs were guilty of violating any law it was the law of the State, and that the recorder's court had no jurisdiction to try them therefor, or to require them to yield possession of their grain or cause it to be destroyed; and that their property was taken without due process of law.

1. Nowhere in the petition is it alleged that the grain condemned and destroyed was not a nuisance or was not dangerous to the public health. The mere narrative statement that the plaintiffs declined to comply with the order of the board of health, or with the notice given by the sanitary inspector, on the ground that their property, although damaged by the flood, was still of considerable value and there was no reason why they should be required to throw it away, some being dry and some wet, is certainly not any direct allegation that the damaged grain was not a nuisance or that it did not endanger the public health, nor is it any substitute therefor. Fairly construed it could not be treated as putting in issue, or as offering to put in issue, the fact of the existence of the nuisance. No doubt, on the ordinary principles of pleading, if the petition had not made a *prima facie* case of justification so far as the city is concerned, the fact of nuisance would have been matter for plea. But the facts set forth, aided as they must be by the presumption that public officers do not violate but perform their duties, make a *prima facie* case of justification, for it is evident that the board of health did in fact consider and decide that the grain was dangerous to the public health. The chief, if not the only reason suggested against the binding force of that decision is that it was made without notice to the owners of the property. But, according to the authorities, notice was not essential except for the purpose of rendering the decision conclusive, the nuisance in question, if one at all, being a nuisance at common law.

City of Salem *v.* Eastern R. R. Co., 98 Mass. 431; The Manhattan &c. Co. *v.* Van Keuren, 23 N. J. Eq. 251; The Newark &c. Co. *v.* Hunt, 50 N. J. L. 308; *The Mayor &c. of Americus* v. *Mitchell,* 79 *Ga.* 807. What was done by the board of health left the question of nuisance open to be contested by the plaintiffs if they chose to bring such an action as would put that question in issue. But the present action, as we have seen, neither tenders nor invites any issue on that subject. We will not say that this is the sole impediment to a recovery. We only say that it is one which is insuperable, and on account of which the decision of the superior court sustaining the demurrer to the petition can be and is upheld. It must be borne in mind that the petition alleges that the recorder acted without any jurisdiction over the subject-matter. If this was so, the order which he made was no more binding upon the city than upon the plaintiffs. Except through the medium of that order imposing, or threatening to impose, a fine upon them, the plaintiffs were not coerced to destroy or to take part in destroying the grain. This being so, they are to be treated as having acted voluntarily. The alleged acts of the city officials in burning the grain did not subject the city itself to answer in any wise for the destruction of the property. The city officials, who are not described either by name or by the offices they filled, did not represent the corporate body in performing the acts complained of, in execution of the recorder's judgment. If the recorder had no jurisdiction to deal with the matter, and the petition distinctly alleges that he had none, the plaintiffs should have stood out against an order or judgment passed by the recorder which that magistrate was not authorized or empowered to pass. The plaintiffs aver that they protested and did not consent. But the facts they set forth show they not only consented but partici-

pated, being, as they allege, forced to do so by a judgment of the recorder which he had no jurisdiction to render. Under a void judgment they surrendered up their property to the city officials to be destroyed, and it was destroyed. Doing this under a void judgment was the same as doing it under no judgment at all. Nothing can be more obvious than that the city cannot be made liable on account of the part which the recorder took in the transaction complained of.

2. But it is said that even if the grain was a nuisance dangerous to the public health, and was legally condemned as such and properly destroyed under the authority of the municipal government, the plaintiffs are entitled to compensation under the provision of the constitution which the petition cites. There can be no doubt that this position is not well taken. To destroy property because it is a dangerous nuisance is not to appropriate it to a public use, but to prevent any use of it by the owner and put an end to its existence because it could not be used consistently with the maxim *sic utere tuo ut alienum non laedas.* In abating nuisances the public does not exercise the power of eminent domain, but the police power. Manhattan Manufacturing &c. Co. *v.* Van Keuren, 23 N. J. Eq. 251; Weller *v.* Snover, 42 N. J. L. 341; City of St. Louis *v.* Stern, 3 Mo. App. 48; Thilen *v.* Porter, 14 Lea, 622; Mugler *v.* Kansas, 123 U. S. 623; Mills, Em. Dom. §§6, 7.

For statutory provisions touching the powers of the board of health of Augusta and touching the recorder's functions in connection therewith, see Acts of 1877, p. 142; Acts of 1880–1, p. 365. We quite agree with the presiding judge of the superior court in the opinion that no cause of action is in sight.

*Judgment affirmed.*