## CASSIDY *v.* WILEY, ordinary.

1. Where a person operating a place of business under a license authorizing the sale by retail of drinks in imitation of or intended as a substitute for beer, ale, wine, whisky, or other alcoholic, spirituous, or malt liquors, under the Civil Code (1910), § 1765, was convicted of unlawfully keeping on hand at his place of business alcoholic, spirituous, malt, and intoxicating liquors, under the Penal Code, § 426, and it was conceded that the place of business so referred to was that where he conducted business under the license above mentioned, ipso facto, under the Civil Code (1910), § 1769, he became disqualified from holding another similar license.

2. Under such circumstances, there was no breach of duty on the part of the ordinary in refusing to issue to such person a new license to conduct the same business; and there was no error on the part of the superior court in refusing to compel him to do so by writ of mandamus.

3. The provision of Civil Code (1910), § 1769, in regard to disqualifying one who has violated the prohibition law, under color of his license to sell what is commonly called "near beer" from holding another license to conduct that business, as applied to one who has been convicted of keeping spirituous, malt, and intoxicating liquors at his place of business, is not in conflict with the fourteenth amendment of the constitution of the United States, as depriving the applicant for the license of liberty or property without due process of law; nor is it violative of the clause of the State constitution containing a similar provision.

FEBRUARY 18, 1914.

Petition for mandamus. Before Judge Mathews. Bibb superior court. November 22, 1913.

S. D. Cassidy filed a petition for mandamus against C. M. Wiley, ordinary of Bibb county, to compel the respondent to issue to him a license to conduct the business of selling a commodity in imitation of or intended as a substitute for beer, under the Civil Code (1910), §§ 1763, 1765. The court granted a rule nisi, and upon the final hearing the case was submitted to the judge upon an agreed statement of facts, which was in substance as follows: On November 11, 1913, the plaintiff applied to the ordinary for a license for that year to engage in the sale of a commodity in imitation of or intended as a substitute for beer. The ordinary asked the plaintiff if he had been convicted for a violation of the prohibition law since its passage in 1908, and the plaintiff admitted that he was so convicted in June, 1911. Thereupon the ordinary refused to issue to him a license, on the ground that section 1769 of the Code prohibited the plaintiff from obtaining a license. In the year 1911 the plaintiff was engaged in the business of the sale of a beverage or drink in imitation of or intended as a substitute for beer, under a license by the State, this license being granted to him on January 3, 1911, as a retailer of "near beer." On July 3, 1911, the plaintiff was convicted on an indictment charging him with a misdemeanor, in that on the 5th day of May, 1911, in Bibb county, Georgia, he did then and there unlawfully keep on hand at his place of business alcoholic, spirituous, malt, and intoxicating liquors. The unlawful keeping on hand, for which the plaintiff was convicted, occurred during the year 1911 at the plaintiff's place of business, where he held the "near-beer" license above referred to, and while he was operating his place of business under that license.

In addition to the agreed statement of facts, an affidavit of the petitioner was introduced, which in substance was as follows: In June, 1911, he was engaged in the business of the sale of a commodity or a beverage in imitation of or a substitute for beer, and was operating a place of business in the City of Macon, under and by virtue of a license issued to him by the ordinary of the County of Bibb and a license issued to him by the Mayor and Council of the City of Macon. While thus engaged he kept on hand at his place of business certain intoxicating beverages, but they were

not kept by him under color of the license granted to him for the sale of a commodity or a beverage in imitation of or substitute for beer, but they were kept at his place of business in violation of law. The court denied the mandamus absolute, and the petitioner excepted.

Jesse Harris, for plaintiff.   Feagin & Hancock, for defendant.

LUMPKIN, J.   (After stating the foregoing facts.)

1, 2.   The present case arises under an application for a mandamus absolute to compel the ordinary to issue a license authorizing the petitioner to sell what is commonly known as "near beer." It has been held by this court several times, that, in order to entitle one to the writ of mandamus, it must appear that he has a clear legal right to have a particular act performed, the doing of which he seeks to have enforced. Adkins v. Bennett, 138 Ga. 118 (74 S. E. 838).   Civil Code (1910) § 1769 reads as follows: "Any person who shall sell, or furnish, keep, or give away, under color of the license herein required, any liquor, drink, or beverage prohibited by law shall, in addition to any penalty which he may otherwise be liable to, forfeit said license and be forever disqualified from holding any such license or being in the employment of any person holding such license.; and any person holding such license who shall knowingly employ any person so disqualified shall forfeit his license and be in like manner disqualified." In Cassidy v. Howard, 140 Ga. 844 (80 S. E. 1), it was held that in an equitable proceeding to abate and enjoin a "blind tiger" under the provisions of the Civil Code (1910), §§ 5335 et seq., on the hearing of the application for an interlocutory injunction, the defendant could not be adjudged to be disqualified from doing business under a "near-beer" license held by him, from ever doing business under any such a license, and from being employed by another engaged in business under such a license; and that, in such a proceeding, he could not be enjoined from so doing.   It was said in the opinion that the expression, "in addition to any penalty which he may otherwise be liable to," he shall forfeit his license, etc., was inapplicable to the equitable proceeding provided by the statute for the abatement of a "blind tiger," but constituted an additional penalty upon such person, if convicted of a violation of the general prohibition law.   This decision, however, did not hold that the indictment for a violation of the prohibition law must allege, and

the evidence prove, that the violation was under color of the license held by the defendant, and that the judge in trying the criminal case had to include in his sentence a declaration of disqualification. The law does not so provide, but expressly declares that, in addition to any penalty to which he may otherwise be liable, he shall forfeit his license, and be forever disqualified from holding any such license. The language of this act makes it self-operative. By the Penal Code (1910), § 426, the sale, bartering, giving away to induce trade, or keeping or furnishing, or manufacturing, or keeping on hand at a place of business of any alcoholic, spirituous, malt, or intoxicating liquors is declared to be a misdemeanor. For a violation of this law an offender is subject to fine or imprisonment or both. If a person holding a "near-beer" license, under color of it, violates the law just mentioned, and is convicted of such violation, he is subject to fine or imprisonment; but in addition the Civil Code (1910), § 1769, declares him to be disqualified from thereafter engaging in that character of business. Ipso facto upon conviction he becomes disqualified, and it requires no judgment of disqualification to make him so. It is the law, not a judgment announcing it, which works the disqualification. It is suggested that he should be indicted for violating the prohibition law "under color of the license," and should be tried and convicted therefor, and sentenced accordingly. The difficulty about this suggestion is that there is no such distinct criminal offense as violating the prohibition law under color of a license. Section 426 of the Penal Code creates no such offense different from any other violation of the law, and section 1769 of the Civil Code does not undertake to create a new criminal offense, but simply to provide for a disqualification arising from a conviction under the other law. If an indictment should undertake to describe a different offense from that provided in the statute, either it might be demurrable, or the superadded words might be surplusage. But no new offense can be created by the courts by tacking a civil statute on to a criminal one.

There are two classes of forfeitures, disqualifications, or the like. In one class they are made a part of the penal statute, enter into the trial of the criminal case, and are declared as a part of the sentence pronounced by the court in that case. In the other they do not form any part of the trial or sentence in the criminal case, but the forfeiture or disqualification is declared by the statute itself

upon the happening of some event, such as a conviction under the penal law, or a judgment imposing the usual penalty under that law. Under the first class of statutes mentioned, a judgment of forfeiture or disqualification is necessary. Under the latter, no judgment declaring a forfeiture is essential, but from the existence of certain facts the law declares a certain result. Both classes of statutes have been recognized as legal in this State. In *Newman* v. *State,* 101 *Ga.* 537 (28 S. E. 1005), the statute under consideration declared that "If any vender of intoxicating liquors shall be convicted of the violation of any law controlling or regulating the liquor traffic, it shall be a part of the sentence that his license shall be forfeited, and that he shall be disqualified from selling any form of intoxicating liquors for the term of one year from the date of the sentence, in his own name or right as agent or otherwise; and if he shall sell, or become in any way interested in the sale of, such liquors after his license has been revoked, he shall be guilty of a misdemeanor." Here the revocation of the license and disqualification were distinctly made a part of the sentence to be imposed by the trial judge, and it only became a misdemeanor for the defendant to sell liquor after such a revocation was made. It was accordingly held, that, as the judgment must follow the pleadings, the indictment or presentment should charge that the defendant was a licensed dealer. On the other hand, in *Sprayberry* v. *City of Atlanta,* 87 *Ga.* 120 (13 S. E. 197), a municipal ordinance, enacted under charter authority, provided that "the conviction in a State court of any person licensed to retail spirituous or malt liquors, for the violation of the State statute in relation to the sale of ardent spirits to a minor or a person already intoxicated, or the conviction of a retailer before the recorder's court for the violation of any of the provisions of this ordinance, shall work an immediate revocation of the license of such person; and for any further exercise of the privilege granted by such license he shall be punished as one retailing without license." Evidently it was not necessary, under an indictment in the State court or the summons in the recorder's court, for a judgment of forfeiture of the municipal license to be declared. There was no provision of law for any such declaration. But, upon a judgment of conviction, the law itself provided for the forfeiture. In delivering the opinion Mr. Justice Simmons said (p. 124): "And we think they can also impose a

condition that upon his conviction of a violation of a State law or of a city ordinance regulating the sale of liquors, his license shall be ipso facto revoked." In *Cassidy* v. *Mayor and Council of Macon*, 133 *Ga.* 689 (66 S. E. 941), the ordinance involved provided that the conviction of the holder of a "near-beer" license of a violation of the municipal ordinance prohibiting the having or keeping of intoxicating liquors in the city for the purpose of illegal sale should work an immediate cancellation, revocation, and forfeiture of such license. There was no provision in the ordinance requiring the recorder to declare a forfeiture; and it appears from the record of file that the judgment of the recorder did not contain any such declaration. A resolution was introduced before the municipal council to declare a revocation and cancellation of the license; and the person to whom it had been granted filed an equitable petition to enjoin the municipality from interfering with his business. If it had been necessary to have a judgment of forfeiture, the introduction before the municipal council of an ex parte resolution would not have answered. This court gave it no effect in considering the case, but upheld the ordinance providing for a revocation or forfeiture ipso facto upon conviction. The difference in views of some of the Justices who presided in that case will be mentioned later.

There are other laws providing for certain disqualifications, besides those in regard to the sale of liquor or "near beer." The constitution declares that "No person who, after the adoption of this constitution, being a resident of this State, shall have been convicted of fighting a duel in this State, or convicted of sending or accepting a challenge, or convicted of aiding or abetting such duel, shall hold office in this State, unless he shall have been pardoned; and every such person shall also be subject to such punishment as may be prescribed by law." Civil Code (1910), § 6407. Here is a provision for the imposition of the ordinary punishment under the penal law, and also for a disqualification arising from a conviction; but it would hardly be contended that the constitutional disqualification would be of no force unless the judge in pronouncing sentence saw fit to incorporate in it such a provision. By the Civil Code (1910), § 35, it is declared that certain classes of persons shall not be permitted to vote. One of these classes includes "Those who shall have been convicted in any court of com-

petent jurisdiction of treason against the State, of embezzlement of public funds, malfeasance in office, bribery or larceny, or of any crime involving moral turpitude, punishable by the laws of this State with imprisonment in the penitentiary, unless such person shall have been pardoned." Here is a disqualification resulting by statute from the fact of conviction. But no judge ever thought of including in every sentence pronounced upon a person so convicted that he should be disqualified from voting, nor will it be contended that the disqualification would be inoperative because it was not declared by the judge.

In the statute now under consideration there is no hint of any requirement that either the indictment or accusation or sentence should include any provision in regard to disqualification. Indeed, there is nothing in express terms said about any conviction, but only as to the perpetration of certain acts. But in view of the expression that under such circumstances the person, "in addition to any penalty which he may otherwise be liable to," shall forfeit his license and be disqualified from holding another, this court in *Cassidy* v. *Howard,* supra, referred to the forfeiture and disqualification as something resulting, in addition to the imposition of the usual penalties, from a conviction. While the expression was used in the opinion that it was an additional penalty to be imposed upon such person if convicted, this did not mean that it must be imposed by the judge, but by the law. To hold otherwise would require this court to construct by implication a new and additional crime, or element of a crime, not contained in the penal statute, and to authorize the introduction, on the trial of one prosecuted under the Penal Code, of a new issue in addition to the one provided by the penal statute itself; and to do this by the construction of a distinct and separate civil statute. This court has no authority to do any such thing. The real point determined in the *Cassidy* case was that the statutory provision in regard to abating or enjoining a "blind tiger" did not include the right to declare a forfeiture of the license or a disqualification to hold one.

Without undertaking to give an exact definition of the expression, "under color of the license herein required," it is plain that the conduct of the petitioner for the writ of mandamus, which brought about his conviction, was under color of his license within the meaning of the statute. It was admitted in the agreed state-

ment of facts that the petitioner was in 1911 engaged in the business of selling a beverage or drink in imitation of or intended as a substitute for beer, under a license granted by the State for that purpose, and that he was convicted, in the city court of Macon, of unlawfully keeping on hand at his place of business alcoholic, spirituous, malt, and intoxicating liquors; and it was further admitted that this unlawful keeping occurred at the place of business for the operation of which he held a license, and while he was conducting business under such license. His only authority or color of authority for conducting business at that place, so far as the record shows, was by virtue of his "near-beer" license. While doing so under such license, he violated the statute by virtue of which the license was obtained, did an act which was prohibited by it, and was convicted for that act under a statute which made it penal. To hold that this was not within the terms of the act in regard to the forfeiture of the license and the disqualification to obtain another, on the theory that the act was not done under color of his license, would be simply juggling with words. The petitioner made an affidavit, that, while the facts above mentioned were true, he did not keep the liquors at his place of business under color of his license, but in violation of the law. A witness may sometimes aid a court in ascertaining the facts, or may render their ascertainment difficult. But the law can not be changed by affidavit.

If the law provides a disqualification for one applying for a license of this character, and its terms are applicable to the present plaintiff in error, it follows as a matter of course that he had no right to compel the ordinary to grant to him such a license, and that there was no error in refusing to grant a mandamus absolute to compel that officer to do so.

3. The provision of the act of 1908, which is codified in the Civil Code (1910), § 1769, was attacked as unconstitutional. It was contended that it was violative of the fourteenth amendment of the constitution of the United States, "in that it deprived your relator of the right to earn a livelihood, which is contrary to the constitution of the United States and the amendments thereof;" and also that the refusal of the ordinary to issue the license was in violation of article 1, sec. 1, par. 3, of the constitution of the State, which likewise declares that no person shall be deprived of life, liberty, or property, except by due process of law, "in that it

deprives your relator of the right to earn a livelihood in a legiti-
mate occupation." The Supreme Court of the United States has
expressly declared that the fourteenth amendment—broad and com-
prehensive as it is—was not designed to interfere with the police
powers of the States. Barbier *v.* Connolly, 113 U. S. 27 (5 Sup.
Ct. 357, 28 L. ed. 923). And the same tribunal (referring to the
powers possessed by the States and those which had been delegated
to the Federal government) has said that "all those powers which
relate to merely municipal legislation, or what may, perhaps, more
properly be called internal police, are not thus surrendered or re-
strained, and that, consequently, in relation to these, the authority
of the State is complete; unqualified, and exclusive." City of New
York *v.* Miln, 11 Peters, 102, 139 (9 L. ed. 648) ; Black on In-
toxicating Liquors, § 27. In Stone *v.* Mississippi, 101 U. S. 814
(25 L. ed. 1079), Mr. Justice Waite said (p. 820) : "The con-
tracts which the constitution protects are those that relate to prop-
erty rights, not governmental." If the license involved were one
to sell spirituous or malt liquors, it would be settled by repeated
adjudications that such a license would constitute neither a contract
nor a property right in the licensee as against the licensor, but a
mere permit to do what would otherwise be an offense against the
general law, and that it might be revoked or denied without violat-
ing the above-mentioned provision of the constitution of the United
States or that of the State. *Ison* v. *Mayor & Council of Griffin,*
98 *Ga.* 623 (25 S. E. 611) ; *Plumb* v. *Christie,* 103 *Ga.* 686 (30
S. E. 759, 42 L. R. A. 181) ; Black on Intoxicating Liquors,
§ 34; 1 Woollen and Thornton, Intoxicating Liquors, § 124.

It is contended, however, that the license to sell a beverage, drink,
or liquor in imitation of or intended as a substitute for beer, ale,
wine, whisky, or alcoholic, spirituous, or malt liquors, for which
provision is made in the Civil Code (1910), § 1765, should not be
analogized to a license to sell intoxicating liquors; and that traffic
in such drinks should not be subject to police regulation like the
sale of spirituous or malt liquors, but should rather be classified
with the ordinary vocations of life which advance human happi-
ness, or with trade and commerce which do not produce or have a
tendency to produce immorality, suffering or loss. But if one de-
sires to do the business of selling imitations of or substitutes for
liquor, he must not be surprised if the law deems it necessary to

cast certain safeguards around that business. These drinks have come to be designated by the colloquial term "near beer." In *Campbell* v. *City of Thomasville, 6 Ga. App.* 212 (64 S. E. 815), it was held that "The selling of 'near beer' is a business which, from its very nature, admits of strict regulation under the police power. It stands legitimately in a different class from the business of selling drugs, soda water, and similar liquids. Regulations may be upheld as applied to this occupation which would be arbitrary and unreasonable if there were an attempt to apply them to other businesses." In the opinion Powell, J., said (p. 228) : "The very name 'near beer' is as suggestive to the guardian of the police power of a necessity for close oversight, regulation, and control as it is to the drinking classes of possibilities which they may hope to find in the beverage. Its very name, so to speak, is a transcript of its character. A liquor that is 'near beer,' looks like beer, smells like beer, tastes somewhat like beer, capable of cheering though not of inebriating, well deserves the attention of those whose duty it is to protect the health, peace, and good order of the community. The argument that, since 'near beer' is not an intoxicating liquor, dealers in it should stand on the same footing as dealers in soda water and other similar beverages well comports with the zeal and partizanship which is to be expected of counsel in the case; but we would stultify ourselves if we did not recognize an essential distinction and a well-marked difference between the two classes." In *Cassidy* v. *Macon,* supra, this court recognized that the temptations to which persons engaged in selling "near beer" may be subjected to violate the prohibition law, and the peculiar facilities which such a business affords to unscrupulous persons engaged therein for such violation, with injurious consequences to the peace, good order, and security of the community, furnish a proper basis for police regulation of the business. Mr. Justice Atkinson and the writer of the present opinion dissented in that case. They did not dissent to the view above expressed in regard to what is called "near beer," but to going further and holding that a separate license held by the same person for the sale of "soft drinks," such as soda water and the like, fell within the same category, and that such license could also be revoked because under his "near-beer" license the holder of both violated the law. There may also have been some doubt as to the extent of the charter power there in-

volved. The right to exercise police control over the sale of what is commonly known as "near beer" was also recognized in *Manor v. City of Bainbridge,* 136 *Ga.* 777 (71 S. E. 1101).

While at the time of the passage of the act of 1908 an extensive change was being made in the method of dealing with the penitentiary convicts, and the obtaining of revenue in connection therewith was an important consideration in the passage of that act, it can not be denied that it recognized the nature of the business which was being licensed, and made police regulations and restrictions in regard to it. The act has since been codified in the Code of 1910 in sections 1763 et seq., and that code has been adopted by the legislature. In it the provision now under consideration appears in section 1769. If there was ever any question as to whether that section might have been objectionable as a part of the original act, it has now been adopted as a part of the code. *Central of Georgia Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). In *Carswell* v. *Wright,* 133 *Ga.* 714 (66 S. E. 905), the provision under consideration, which constituted the eighth section of the act, was not held to be unconstitutional; but it was merely said that, even if it were unconstitutional, that would not destroy the entire act.

It has been said that "the fourteenth amendment forbids the States to make or enforce any law which shall 'abridge the privileges or immunities of citizens of the United States.' But the right to sell intoxicating liquors is not one of the privileges or immunities here contemplated." Black on Intoxicating Liquors, § 36. And likewise we do not think that the right to sell things in imitation of or intended as a substitute for spirituous or malt liquors, in a State which prohibits the sale of intoxicating liquors, is one of the privileges or immunities of citizens of the United States which can not be dealt with or abridged under the police power of the State.

*Judgment affirmed. All the Justices concur.*