### ROWLAND *v.* MORRIS ~et al.

1. The act of the legislature, approved August 17, 1918 (Ga. Laws 1918, p. 256), which provides for State-wide tick eradication, is not unconstitutional because it violates the due-process clause of the Federal constitution and a similar provision in the State constitution, in that it does not give to the owners of cattle notice and an opportunity to be heard in opposition to their quarantine and dipping for such purpose; and said act is not unconstitutional (*a*) because it violates the fifth amendment to the Federal constitution, (*b*) because it violates article 1, section 1, paragraph 2, of the constitution of this State, and (*c*) because it violates the fourth paragraph of said article and section.
2. The inspector and sheriff were authorized to quarantine and dip the cattle of the plaintiff without any warrant; and the fact that they were proceeding to do so under color of an affidavit made by the inspector and a warrant issued thereon by the judge of the superior court, when there was no authority for such · procedure, does not render their action illegal and void.
3. The court did not err in refusing to grant an injunction, under the pleadings and facts in this case.

No. 2649.     FEBRUARY 28, 1922.

Petition for injunction. Before Judge Kent. Johnson superior court. May 14, 1921.

J. R. Rowland filed his petition against L. Davis, sheriff of Johnson county, and C. E. Morris, State cattle inspector in said county, to enjoin them from quarantining his cattle and having them dipped for tick eradication under the statute of this State passed for such purposes. He attacked this statute on the ground that it is unconstitutional, in that it does not provide for notice and an opportunity to be heard before his cattle could be seized, quarantined, and dipped, in violation of the due-process clause of the fourteenth amendment · to the constitution of the United

States, and of the similar provision in the State constitution. He further asserts that this act is in violation of article 1, section 1, paragraph 2, of the constitution of this State, which declares that " Protection to person and property is the paramount duty of government, and shall be impartial and complete." He further asserts that this act is unconstitutional because it violates article 1, section 1, paragraph 4, of the constitution of this state which declares that " No person shall be deprived of the right to prosecute or defend his. own cause in any of the courts of this State, in person, or by attorney, or both." He further asserts that this act is unconstitutional because it violates the fifth amendment to the constitution of the United States, and because it violates the provision of the State constitution that private property shall not be taken for public use without just compensation. He further asserts that these officers are proceeding illegally to quarantine and dip his cattle, under an affidavit sworn to by said inspector before the judge of the superior court of said county, and under a warrant issued by the latter; and that there is no authority of law for the making of said affidavit and the issuing of said warrant. He further alleges that his cattle are not infected with ticks and have not been exposed to tick infestation. He further alleges that his cattle are kept on his own premises, and not allowed to run at large. With one exception they are milk cows, kept for the use of himself and family, and by reason of the distance they would have to be taken to be dipped, and the manner prescribed for their dipping, there is great danger of damage to them, for which the defendants are not responsible. R. R. Martin and J. C. Williams deposed for the plaintiff that they had examined his cattle carefully and thoroughly, that they found them free from ticks, and so far as they knew or could learn from others the same have not been exposed to tick infestation.

Defendants in their answer denied the allegation in the petition that the plaintiff was never served with notice as required by the tick eradication act. They denied all the attacks made upon the constitutionality of the act. C. E. Morris, in behalf of the defendants, deposed that he is a duly appointed and qualified cattle inspector of this State, that Johnson county is, by virtue of an order passed by the State veterinarian, put under quarantine, that he has found that a good portion of the cattle of said county

are affected with cattle-ticks, that splenetic fever from cattle-ticks exists in said county at this time, that the cattle of the plaintiff, if not infected with cattle-ticks, are exposed to infestation, that the plaintiff failed and refused to dip his cattle at such time and place as had been designated by the local cattle inspector, that his cattle would become infected with Texas fever, and all cattle in said county are exposed to this fever, and unless checked the same would become general among the cattle of the county, rendering the flesh and milk of cattle diseased and unfit for food, and thereby seriously affect the health of the community. The failure of the plaintiff to comply with the law would delay the completion of the tick eradication, thereby necessitating dipping for another year, which would put a great expense upon the county and taxpayers, and upon individuals who have complied with the dipping law. Notice has been given to the public by posting at the court-house, along the county line, and upon public highways, that said county was under quarantine. Turner Scarboro deposed for defendants, that he had in his possession a cow of the plaintiff, that it had never been dipped, as required by the tick-eradication law, that he was instructed by plaintiff not to carry said cow to be dipped until instructed by him, that he has had possession of said cow since March 18, 1921, at which time said cow had ticks on her.

Plaintiff alleged in his petition that he had not been served with written notice requiring him to dip his cattle, thirty days before the defendants undertook to quarantine his cattle. This the defendants denied in their answer, and proved that such notice had been served.

The case was heard on the petition, answer, and affidavits. After hearing the evidence the court below denied an injunction, and the plaintiff assigns this ruling as error.

*A. L. Hatcher* and *Adams & Camp,* for plaintiff.

*C. S. Claxton, R. A. Denny, attorney-general,* and *Graham Wright, assistant attorney-general,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. On August 17, 1918, the legislature passed the statute known as the State-wide tick-eradication act. The plaintiff filed his petition to enjoin the county cattle inspector and sheriff of the county from putting his cattle in quarantine, and from dipping

the same, under the provisions of this act, on the ground that the same was unconstitutional, because ıt did not provide for notice to the owners of such cattle, and did not give them an opportunity to be heard on the question whether their cattle were infested with ticks or had been exposed to tick infestation. The plaintiff insists that he was thus deprived of due process of law, under the fourteenth amendment to the constitution of the United States and under the similiar provision in our State constitutıon.

The fourteenth amendment to the Federal constitution is not designed to interfere with the police power of the State to prescribe regulations to protect the health, peace, morals, education, general welfare, and good order of the people. Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. ed. 923); State v. McCarty, 5 Ala. App. 212 (59 So. 543); *Cassidy* v. *Wiley,* 141 *Ga.* 331, 338 (80 S. E. 1046, 51 L. R. A. (N. S.) 128). In the last case this court has held that the similar provision in our State constitution does not interfere with the exercise by the State of this power. If this statute falls within the circle of the police power, it lies out of the orbit of the due-process clauses of the Federal and State constitutions. So the question arises, does this statute come within the police power of the State? What is the police power? "It ·is universally conceded to include everything essential to the public safety, health, and morals, and to justify · the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. 499, 38 L. ed. 385); *Mack* v. *Westbrook,* 148 *Ga.* 692 (98 S. E. 339). A very large discretion is vested in the legislature to determine what the public interests require, and what measures are necessary to their protection. Barbier v. Connolly, 113 U. S. 27 (supra); Kidd v. Pearson, 128 U. S. 1 (9 Sup. Ct. 6, 32 L. ed. 346); *Mack* v. *Westbrook,* 148 *Ga.* 690, 692 (supra).

The validity of statutes or ordinances authorizing the destruction of animals having infectious or contagious diseases has been sustained in a number of cases, as an exercise of the police power. Durand v. Dyson, 271 Ill. 382 (111 N. E. 143, Ann. Cas. 1917 D, 84); New Orleans v. Charouleau, 121 La. 890 (46 So. 911, 18 L. R. A. (N. S.) 368); Newark etc. R. Co. v. Hunt, 50 N. J. L. 308 (12 Atl. 697); Chambers v. Gilbert, 17 Tex. Civ. App. 106

(42. S. W. 630), s. c. (writ of error refused) 93 Tex. 726; Livingston *v.* Ellis County, 30 Tex. Civ. App. 19 (68 S. W. 723); Maynard *v.* Freeman (Tex. Civ. App.), 60 S. W. 334; Lowe *v.* Conroy, 120 Wis. 151 (97 N. W. 942, 66 L. R. A. 907, 102 Am. St. R. 983, 1 Ann. Cas. 341); Houston *v.* State, 98 Wis. 481 (74 N. W. 111, 42 L. R. A. 39). So goods laden with infectious disease may be seized under health laws, and, if they can not be purged of their poison, may be committed to the flames. Gilman *v.* Philadelphia, 70 U. S. 713, 730 (18 L. ed. 96). So a city having power to abate nuisances endangering the public health and safety may destroy damaged grain. *Dunbar* v. *Augusta,* 90 *Ga.* 390 (17 S. E. 907). So bedclothing infected with disease may be destroyed. *Mayor &c. of Savannah* v. *Mulligan,* 95 *Ga.* 323 (22 S. E. 621, 29 L. R. A. 303, 51 Am. St. R. 86). The confiscation and destruction of milk intended to be sold in a city, which has been drawn from cows not subjected to tuberculin tests, as required by a municipal ordinance, does not unconstitutionally deprive the owner of his property without due process of law. Adams *v.* Milwaukee, 144 Wis. 371 (129 N. W. 518, 43 L. R. A. (N. S.) 1066), s. c. 228 U. S. 572 (33 Sup. Ct. 610, 57 L. ed. 971). So the quarantine of domestic animals, infected with disease, or which have been exposed to such infestation, falls within the police power and is not inhibited by the constitution of the United States. Richter *v.* State, 16 Wyo. 437 (95 Pac. 51); State *v.* Mo. Pac. Ry. Co., 71 Kans. 613 (81 Pac. 212); Garff *v.* Smith, 31 Utah, 102 (86 Pac. 772, 120 Am. St. R. 924); State *v.* McCarty, 5 Ala. App. 212 (supra); Smith *v.* St. Louis &c. Ry. Co., 181 U. S. 248 (21 Sup. Ct. 603, 45 L. ed. 847).

Where the particular thing, or the act sought to be abated, is made a nuisance by statute, or is characterized as such by the common law, or is such per se, and an officer is commanded by law to abate it, no notice or judicial determination is necessary as a prerequisite to its abatement. In such case an officer or agent effecting the abatement would not be liable. *Mayor &c. of Americus* v. *Mitchell,* 79 *Ga.* 807 (5 S. E. 201); *Dunbar* v. *Augusta,* 90 *Ga.* 391 (supra); *Mayor &c. of Savannah* v. *Mulligan,* 95 *Ga.* 323 (supra); *Western &c. R. Co.* v. *Atlanta,* 113 *Ga.* 537 (38 S. E. 996, 54 L. R. A. 294); *Peginis* v. *Atlanta,* 132 *Ga.* 302 (63

S. E. 857, 35 L. R. A. (N. S.) 716; McWilliams v. Rome, 142 Ga. 848 (83 S. E. 945).

In cases where statutes or valid municipal ordinances define the terms and conditions upon which property may be destroyed as a nuisance, or persons or property quarantined when infected by disease, or exposed to contagious disease, the officers or agents of a State or municipality act at their peril. Mayor &c. of Savannah v. Mulligan, supra; McWilliams v. Rome, supra. Does this act declare cattle which have not been treated for tick eradication a nuisance? It prohibits the movement of cattle infested with the cattle-fever tick into, within, or through this State, at any time or for any purpose, except as therein provided. It requires the county authorities in each and every county, where tick eradication has not been completed, to construct such number of dipping-vats as may be fixed by the State veterinarian, and to provide the proper chemicals and other materials necessary to be used in the systematic work of tick eradication in such counties. Cattle, horses, or mules infected with cattle-ticks or exposed to tick infestation, where their owners, after thirty days written notice from a local or State inspector, shall fail or refuse to dip such animals every fourteen days in a vat properly charged with arsenical solution as recommended by the United States Bureau of Animal Industry, under the supervision of the local inspector in charge of tick eradication, shall be placed in quarantine and dipped and cared for at the expense of the owner by the local inspector. It is made unlawful for any inspector to knowingly permit any cattle, horses, or mules to be kept in the territory for which he is appointed, without being so treated. While this statute does not in so many words declare cattle which have not been treated for tick eradication, as provided in this act, to be public nuisances, it does in effect make them such. York v. Hargadine, 142 Minn. 219 (3) (171 N. W. 773, 3 A. L. R. 1627). It is a matter of common knowledge that the cattle of this State were formerly infested with cattle-fever ticks, or were exposed to tick infestation; and it is now a matter of common knowledge that the cattle in certain counties of this State, including the county of Johnson, are still infected with these ticks, or exposed to such tick infestation. This court will take judicial cognizance of the fact that Texas fever, a communicable and dangerous

cattle disease, is prevalent in all counties of the State where tick eradication has not been completed; and that this state of affairs existed in the county of Johnson. State *v.* McCarty, 5 Ala. App. 212, 227 (supra); Grimes *v.* Eddy, 126 Mo. 168 (28 S. W. 756, 26 L. R. A. 638, 47 Am. St. R. 653).

As this statute in spirit and effect declares cattle which have not been treated for tick eradication to be public nuisances and dangerous to the cattle industry of the State, the same can be summarily quarantined and treated for the purpose of tick eradication. The prevention of disease is the essence of a quarantine law. Such a law is directed not only to the actual disease, but to all that have become exposed to it. Smith *v.* St. Louis etc. Ry. Co., 181 U. S. 248 (supra).

The summary abatement of this nuisance by quarantine and dipping of these cattle is the only available and efficient method of accomplishing the ends sought. If the right to abate had to be judicially determined after notice to a cattle-owner and an opportunity to be heard, the remedy would prove practically worthless. Lieberman *v.* Van De Carr, 199 U. S. 552 (26 Sup. Ct. 144, 50 L. ed. 305); Adams *v.* Milwaukee, 228 U. S. 572, 584 (supra).

This statute is not unconstitutional for any of the reasons alleged by the plaintiff. We have undertaken to show above that it does not violate the fourteenth amendment to the constitution of the United States or the same provision of the constitution of this State. It does not violate the fifth amendment to the constitution of the United States, because that amendment is a limitation upon the power of Congress, and not upon the powers of the State. Quarantining infected cattle, and treating them for the eradication of disease, is not such a taking of property for public use as requires compensation to be made to the owner. Wherever property becomes a nuisance, the nuisance can be abated without compensation to the owner and at his own expense. *Dunbar* v. *Augusta,* 90 *Ga.* 390 (supra).

2. It is alleged by the plaintiff that the county inspector and sheriff are proceeding to seize, quarantine, and treat his cattle for tick eradication, under an affidavit made by the inspector reciting that the plaintiff has failed, after due notice, to dip his cattle as required by this act, and under a warrant based on said affidavit,

issued by the judge of the superior court, directing the sheriff to quarantine and dip said cattle, when there is no authority for the making of said affidavit or the issuing of said warrant. This act directs the local inspector to do these things, and makes it the duty of the sheriff of any county in which the work of tick eradication is in progress to render said inspector any assistance necessary to the enforcement of this act. The statute is the warrant for the inspector and sheriff to seize, quarantine, and treat these cattle. No warrant from any court is necessary for this purpose. Conceding that the affidavit made by the local inspector and the warrant issued by the judge of the superior court to be null and void for want of authority, still these officers were authorized to do these things without any other warrant or authority than that conferred by these acts. The fact that such warrant was null and void does not prevent them from acting under the authority of the statute.

So we think the judge properly denied the injunction in this case. *Judgment affirmed. All the Justices concur.*

Atkinson and Gilbert, JJ., concur in the judgment.