CREASER, supervisor, *et al.* v. DURANT *et al.*

No. 14808.   April 6, 1944.

*T. Grady Head, attorney-general, Joe Thomas, Victor Davidson* and *L. C. Groves, assistant attorneys-general,* for plaintiffs in error.

*George B. Cowart* and *Conyers, Gowen & Conyers,* contra.

JENKINS, Presiding Justice. ■ Under the stipulation made in this case, as shown by the order of the judge, the sole question for determination is the constitutionality of the statute involved. In a situation very similar to the present one this court in the case of *Price* v. *Hamilton,* 146 *Ga.* 705 (2) (92 S. E. 62), held as follows: "Penal Code, § 603, which declares that any person who shall place in the waters of any river or creek a trap for catching fish, unless the main channel of such stream is left open for a space of ten feet for rivers, and one third of the channel for creeks, at low water mark, and unobstructed for the free passage of fish up and down such stream, shall be guilty of a misdemeanor, and that the sheriff of the county, upon complaint of persons in the territory of such obstruction shall have authority to break and open such obstruction that may be placed in such waters in violation of the Code section, does not offend that clause of the constitution which requires . . that no person shall be deprived of life, liberty, or property except by due process of law. Lawton *v.* Steele, 152 U. S. 133 (14 Sup. Ct. 499, 38 L. ed. 385)." The headnote to the opinion in the Lawton case, cited in the *Price* case, is as follows: "It is within the power of a State to preserve from extinction fisheries in waters within its jurisdiction, by prohibiting exhaustive methods of fishing, or the use of such destructive instru-

534

ments as are likely to result in the extermination of the young as well as the mature fish. The provision in the statutes of New York, c. 591 of the laws of 1880, as amended by c. 317 of the laws of 1883, that nets set or maintained upon waters of the State, or on the shores of or islands in such waters, in violation of the statutes of the State enacted for the protection of fish, may be summarily destroyed by any person, and that it shall be the duty of certain officers to abate, remove, and forthwith destroy them, and that no action for damages shall lie or be maintained against any person for or on account of such seizure or destruction, is a lawful exercise of the police power of the State, and does not deprive the citizen of his property without due process of law, in violation of the provisions of the Constitution of the United States." It will be seen that the Supreme Court of the United States went so far as to hold that the rule would obtain even where the act provided that "no action for damages shall lie or be maintained against any person for or on account of such seizure or destruction." In the Lawton case, decided by the United States Supreme Court, the properties involved were the nets of the offending fishermen, and in that decision it was recognized that there are several cases of contrary purport. The majority opinion seems to base its holding largely on the fact that there would be small amounts involved, and that the cost of a condemnation proceeding would generally largely exhaust the value of the property destroyed and thus impair the free exercise of needful police powers. In the instant case, the impracticability of any sort of condemnation proceeding would seem to be a stronger basis for authorizing a seizure than the small amount actually involved, and the instant facts present a stronger case for the State than in either of the Federal or State cases which have been quoted from. This is true for the reason that it is well known that the deterioration of fish or game would set in very soon, and would ordinarily take place long before it would be possible to resort to any legal proceeding to determine the propriety of the seizure. This case seems plainer than the Lawton case for the additional reason that our statute does not prohibit a suit by any injured party on account of a tort committed under color of the statute, and it is the general rule that, "If a person has been injured and has suffered damage by any wrongful act committed by an officer under color of his office, he can sue such

officer personally or upon his official bond, and recover the amount of the damage." *Citizens Bank of Colquitt* v. *American Surety Co.,* 174 *Ga.* 852 (2, *c*) (164 S. E. 817). While it is the general rule that an officer or agent abating a public nuisance in comformity with power expressly delegated by statute does not become liable for his acts in so doing, it is also the rule that where the statute defines the conditions under which such property may be summarily destroyed as a nuisance, he acts at his peril if he exceeds his authority. *Rowland* v. *Morris,* 152 *Ga.* 842, 847 (111 S. E. 389). Accordingly, while the petitioners allege that the officer who had been committing the alleged tort was insolvent, our Code provides by § 45-141 that the director, and by § 45-142 that the supervisor, of coastal fisheries, shall each give bond in the sum of $10,000, and by § 89-418 it is provided that, "Every official bond executed under this Code is obligatory on the principal and sureties thereon . . for any breach of the condition by a deputy, although not expressed, unless otherwise provided by law . . for the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform, or by the improper or neglectful performance of those duties imposed by law; and it is further provided by § 89-427: "Any person who claims damages of any principal officer for the act of his deputy may at his option sue on said deputy's bond instead of on that of the principal, in the same manner as suit may be brought on the principal's bond." The basis of the authority vested in the legislature to order the summary seizure and disposition of such contraband property would seem to lie in the fact that the protection of game, fish, and wild life comes within the scope of the general police powers for the protection of the general welfare, and that the unlawful destruction of this common property, some of which protects the public against injurious insect life, and all of which affords healthful recreation to the people as well as an important factor in their food resources, constitutes a public nuisance, and therefore is outside of the range of the due-process clause of the Federal and State constitutions. While the statute in this case, just as in the *Price* case and the *Rowland* case, does not specifically make the maintenance of the prohibited enterprise a nuisance, here, as was said in the *Rowland* case, "it does in effect make them such." As was said in the

536

*Rowland* case, "Where the particular thing, or the act sought to be abated, is made a nuisance by statute, or is characterized as such by the common law, or is such per se, and an officer is commanded by law to abate it, no notice or judicial determination is necessary as a prerequisite to its abatement." (Citing numerous authorities.)

Accordingly, on the authority of the Lawton case, and the other authorities cited, and it not appearing on the face of the petition that irreparable injury was involved in the confiscation of the shrimp, we think that the judge erred in restraining the defendants from the further enforcement of the Code, § 45-108, as amended.

*Judgment reversed. All the Justices concur.*