County of Louisa v. Yancey's Trustee and Others.

January 21, 1909.

1. Appeal and Error—*Appeal from County Court to Circuit Court—Review—Jurisdiction.*— On a writ of error from this court to a circuit court, this court has jurisdiction to review the action of the circuit court and to determine whether or not it had jurisdiction of a writ of error from that court to the county court, and, if it had not, to reverse its judgment and enter such judgment as the circuit court ought to have entered. It is not assignable as error, therefore, in this court that the writ of error from the circuit court to the county court was not perfected within the time prescribed by law.

2. Appeal and Error—*Perfecting Appeal—Time Deducted—Objections for First Time in Appellate Court.*—Whether a writ of error from a circuit court to a county court was perfected within the time prescribed by law depends, among other things, upon the time which had elapsed between the presentation of the petition for the writ and the delivery of the record and petition to the clerk of the appellate court, which time is to be deducted. If the case was argued in the circuit court, made a vacation case by consent, and submitted to the court for decision, without making the objection that the writ of error was not perfected within the time prescribed by law, and the record is silent as to the time to be deducted as above mentioned, the objection that the writ of error from the circuit court to the county court was not perfected in due time cannot be raised for the first time in this court.

3. Appeal and Error—*Instructions—Invited Error.*—Although an instruction requested by a defendant was not given by the trial court, yet if it did instruct upon that point as requested by the defendant, he cannot complain, on a writ of error, of the ruling of the trial court on that point. If error was committed, it was invited by him.

4. Verdicts—*Excessive—Case at Bar.*—If. in an . action against a county to recover for the value of goods furnished to persons

in quarantine, it appears that fifteen persons were in quarantine, for only nine of whom the county was responsible, that no account was kept of the goods furnished or used by them, and it is not shown what any of them used, a verdict for the plaintiff for more than nine-fifteenths of the amount claimed as furnished to all of them will be set aside as excessive.

5. NUISANCE—*Destruction of Dangerous Property—Liability of Counties.*—A county is not liable for property destroyed as a dangerous nuisance by the local board of health. Section 1713d of the Code (1904) authorizes the local board of health to see to the abatement of nuisances, but neither that section, nor any other statute, makes the county liable for the value of property destroyed as a nuisance, and in the absence of such a statute there can be no recovery therefor.

6. CONSTITUTIONAL LAW—*Eminent Domain—Public Use—Police Power—Destruction of Property as a Dangerous Nuisance*—Destroying property because it is a dangerous nuisance is not an appropriation to a public use, but is to prevent its use by the owner, and end its existence because it cannot be used by the owner without injury to others. In abating such nuisances, the public does not exercise the power of eminent domain, but the police power.

Error to a judgment of the Circuit Court of Louisa county. There was an appeal from the board of supervisors of the county to the county court, and a judgment was rendered against the county. To this judgment a writ of error was awarded by the circuit court which reduced the judgment of the county court by $115, and as amended affirmed it. To this judgment the county of Louisa assigns error.

*Reversed.*

The opinion states the case.

*Gordon & Gordon,* for the plaintiff in error.

*W. C. Bidd,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Before the argument of this case upon the merits, the defendants in error moved the court to dismiss it upon the ground

that the writ of error granted to the judgment of the county court by the circuit court was not perfected within the time provided by statute.

If this were true, it furnishes no ground for dismissing this writ. The writ of error granted by this court was perfected within the time prescribed by law, and it, therefore, has jurisdiction to review the action of the circuit court and to determine whether or not it had jurisdiction; and, if it had not, to reverse its judgment and enter such judgment as the circuit court ought to have entered. If, on the other hand, it appears that the circuit court had jurisdiction, it will be the duty of this court to pass upon the errors assigned in the petition for the writ of error to this court.

The ground upon which it is claimed that the circuit court was without jurisdiction is, that the judgment of the county court was rendered on the 18th day of August, 1903, and the writ of error to that judgment was not awarded until the 14th day of September, 1904, or at least that no bond was executed until after that date.

It appears that an application was made to Judge Mason on or before January 7, 1904, of whose circuit the county of Louisa was then a part, and he was of opinion that the petitioner had an appeal as a matter of right, and that it should be docketed in the circuit court for that county where it would be heard *de novo*. Subsequently, a writ of error without date was awarded by Judge Grimsley, to whose circuit the county of Louisa had been transferred, but the writ was not to take effect until the bond required should be executed. On the 14th day of September, 1904, an order was entered by the circuit court, striking the case from the docket as improperly thereon, but awarding a writ of error, not to take effect, however, until the bond required by the order was executed. On the 14th of November following, an order was entered by consent of parties making the case a vacation cause, stating that "the writ of error granted in this case failing to show when the petition

for the writ was presented to the judge of this court, the court doth further order that the clerk of the court enter upon said petition that it was presented to him on the 10th day of May, 1904, the court being satisfied that the said petition for a writ of error was presented on that day and the writ of error granted the following day."

When the case was argued in the circuit court, made a vacation case by consent, and submitted to the court for decision, no question was raised as to the jurisdiction of the circuit court because the writ of error had not been perfected within the time prescribed by law. If it had been, the plaintiff might have been able to show that the bond had been executed within a year after the judgment of the county court had been rendered, after deducting the time which elapsed between the presentation of the petition for the writ of error and the delivery of the record with the petition to the clerk of the appellate court. Code, secs. 3470, 3474. How long this was does not appear from the record, and for its non-appearance the petitioner was not responsible.

The question of whether or not the writ of error was perfected within the time prescribed by law being one which might have been affected by matters not appearing in the record, ought to have been raised in the circuit court. Not having been done, it is too late, under the facts and circumstances of the case, to raise it here for the first time.

It appears that the claimant and his brother, in the year 1902, were doing a general merchandise business at Green Spring, in the county of Louisa, under the name and style of Yancey Brothers. The business was conducted in a room of the same building in which the claimant and his family resided. Small-pox having broken out in his home, the house was quarantined. In addition to his own family and employees, other persons were quarantined or kept in the building, and all were supported and maintained during the time

they were there out of the said store, by direction of the physician in charge. Some of the goods were destroyed by direction of the board of health. The goods not so used and destroyed were greatly depreciated in value because of the existence of the small-pox in the building and the use made of the building during that time.

The claimant, as surviving partner, presented a claim against the county, amounting to $2,777.78, made up of the following items:

"STATEMENT OF ACCOUNT FILED BY YANCEY BROS.

Goods from store used for hospital purposes by order of Dr. May, as per itemized statement herewith filed .......................... $406.86

Goods destroyed by board of health, as per itemized statement herewith filed ........... 196.35

Rent of house as hospital, $3\frac{1}{4}$ months .......... 81.25

Loss of use of storehouse for the remainder of lease, by reason of being made a hospital, $12\frac{3}{4}$ months .. .... .. .................... 183.75

3 months compensation as postmaster, express and depot agent, by reason of establishing as a detention house of the hospital, three months, at $25.00 per month ....................... 75.00

Loss of stock while under control of the county.. 522.07

Depreciation of stock by the reason of the use of building for hospital purposes .............. 500.00

Damage in loss of actual profits from enforced suspension of mercantile business by order of board of health, in conjunction with board of supervisors during the establishment of hospital in the building and the continuance of the quarantine and the assumption of absolute control of said property by said board .......... 812.50

$2,777.78"

Of this sum the board of supervisors of the county allowed $92.75 for goods actually destroyed and articles purchased by the county authorities, and rejected the residue of the claim. From that action of the board of supervisors both parties appealed to the county court.

Upon the trial in that court, the jury were instructed that there could be no recovery against the county for any part of the claimant's account, except as to the item for goods furnished from the store for hospital purposes and articles destroyed by order of the board of health; and as to these items the court instructed the jury as follows:

"1. As to the item of $406.86, for goods from store used for hospital purposes, by order of Dr. May, as per itemized statement herewith filed, the plaintiff is entitled to recover only the amount of the value of such items of such goods as were used by Dr. May, and were supplied by his order to, and used by or for parties other than by the plaintiff, Lewis Yancey, his brother, sisters and employees, such value to be determined by the jury upon the evidence as of the time such goods were so supplied and used, and the burden of proof is upon the plaintiff to show what amount of such goods were so supplied and used, and said value thereof, the defendant, the said county of Louisa, not being liable to said plaintiff for such goods as were used by or for him, his brothers, sisters and employees.

"2. As to the item of $196.25, for goods destroyed by board of health, as per itemized statement herewith filed, the plaintiff is entitled to recover the amount of the value of such items of such goods as were destroyed by such board, or by order of Dr. May, which are not covered by the items of the account allowed by the board of supervisors of Louisa county, such value to be determined by the jury upon the evidence as of the time such goods were so destroyed, and the burden of proof is upon the plaintiff to show such value."

Under these instructions the jury found a verdict for $466.49, of which sum $270.64 was for goods used for hospital purposes, and $195.85 for goods destroyed by the board of health. The county court entered judgment for the amount of the verdict, and to that judgment the circuit court granted a writ of error, upon the petition of the county.

That court being of opinion that there was no error in the judgment of the county court, except as to the sum of $115, the value of a box of shoes destroyed by order of the board of health, reduced the judgment to that extent, and as amended affirmed it.

To that judgment this writ of error was awarded.

The errors assigned here are in substance, that the county is not liable either for the goods destroyed or for the goods furnished for hospital or quarantine purposes; or, if liable at all for goods furnished, it is liable only so far as they were used to support and maintain persons in quarantine other than the claimant's family, and his employees; and that there is no proof showing what goods were so used.

The question of whether or not the county is liable for goods used in supporting and caring for persons in quarantine cannot be raised here. The county court held that the county was not liable for them so far as used for the maintenance of the claimant's family and employees. As to the other persons in quarantine, the county conceded by its instruction No. 4 that it was liable for goods furnished, so far as it was proved that they were used for the purpose of maintaining persons in quarantine other than the claimant's family and employees. While the instructions offered by the county were not given, the county court did instruct upon that point as the county had asked. The county cannot now be heard to complain of that instruction of the court upon that question.

But as it asked the court to set aside the verdict of the jury as contrary to the evidence, the question does arise, whether

or not the evidence shows what goods were used for that purpose.

It is impossible to ascertain from the evidence how the jury fixed the liability of the county for goods furnished at $270.64. No account of the goods furnished for or used by the persons in quarantine was kept. It is not shown what any of them used. If in the absence of any such evidence the jury would have been justified in concluding that each person in quarantine used and received the benefit of an equal share of the goods furnished from the store, not over 9/15 of the goods so used could have been chargeable to the county; and yet the sum ascertained is in excess of that sum.

The next question is whether or not the county is liable for the goods destroyed by the local board of health.

By section 1713d of the Code, the local board of health was authorized, among other things, to see to the abatement of nuisances. But there is no provision in that section or elsewhere in our statute law which makes the county liable for the value of property destroyed as a nuisance by the local board of health, and without such a statute it seems to be well settled that there can be no recovery against a city, and still less against a county.

Mr. Dillon, at section 956 of his work on Municipal Corporations, says: "Municipal corporations, or certain officers thereof, are sometimes appointed, by charter or statute, agents to judge of the emergency, and direct the performance of acts which any individual might do at his peril, without any statute at all. And by the statute or charter, such corporations are not unfrequently made liable for damages which individuals may sustain for buildings or property which are destroyed, under the direction of the proper officers, to prevent the extension of a fire. The liability of the municipal corporation in such cases is purely statutory, and therefore, in order to charge the corporation, the case must be clearly and fairly within the enactment."

The rule, as laid down by Mr. Dillon, is fully sustained by the decisions, and applies to many other cases besides fire— some of them, as was said in *Bowditch* v. *Boston,* 101 U. S. 16, 25 L. Ed. 980, "involving the destruction of life itself, where the same rule is applied.  *  *  *  In those cases the common law adopts the principle of the natural law and finds the right and the justification in the same imperative necessity." See *Field* v. *Des Moines,* 39 Iowa, 575, 18 Am. Rep. 46, where many cases on the subject are collected; *Dunbar* v. *Augusta,* 90 Ga. 390, 17 S. E. 907.

It is also well settled that destroying property because it is a dangerous nuisance is not, as seems to be contended in this case, an appropriation of it to a public use, "but is to prevent any use of it by the owner, and end its existence because it could not be used consistently with the maxim, *sic utere tuo ut alienum non laedas;*" and that in abating nuisances the public does not exercise the power of eminent domain but the police power.  *Dunbar* v. *Augusta, supra; Field* v. *City of Des Moines, supra,* and cases cited.

We are of opinion, therefore, that the county was not liable for any part of the goods destroyed by the local board of health, and that the county court erred in not so instructing the jury.

We are further of opinion that it erred in not setting aside the verdict of the jury upon that ground, and also upon the ground that the verdict is not sustained by the evidence as to the value of the goods furnished to the persons in quarantine other than the family and employees of the claimant.

The judgments of the circuit court and of the county court must each be reversed, the verdict of the jury in the county court set aside, and the cause remanded to the circuit court for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*