## Staunton.

## D. S. Good, Executor of M. H. Earman, Deceased, v. Mrs. A. W. Dyer.

September 20, 1923.

1. Bills, Notes and Checks—*Undue Influence—Mental Condition of Maker—Evidence—Appeal and Error—Harmless Error.*—In an action on a note against the executor of the maker after the executor had already testified, that if the note was binding, it and the legacies and other charges on the estate would more than consume it, leaving nothing to pass under the residuary clause of the maker's will, the court refused to permit the defendant to testify more specifically on this subject, by stating what the gross amount of the estate was as inventoried, and to repeat what he had already stated.

   *Held:* That while the court should have permitted the testimony in question, the error was harmless, because the substance of this testimony was already before the jury, and it did not appear from the record that there was any controversy before the jury over the fact.

2. Bills, Notes and Checks—*Consideration—Evidence—Memorandum of Maker's Account with Bank.*—In an action against an executor on a note of his decedent, where the consideration was the promise of the payee to furnish the maker with board and lodging, and the defense was failure of consideration, the court did not err in refusing to permit a memorandum of the figures of the maker's account with a bank to be introduced in evidence as tending to show payments to plaintiff by the maker after the note sued on was given, where there was nothing on the statement to show the dates the checks were given or for what the checks were given, but merely the amounts of the checks and the dates of their payment by the bank.

3. Bills, Notes and Checks—*Consideration—Burden of Proof.*—In an action upon a note the burden of proof is upon the plaintiff to establish the fact that the instrument was given for a valuable consideration.

4. Bills, Notes and Checks—*Consideration—Burden of Proof.*—In an action upon a note the production of the note, with the admission or proof of the signature, makes a *prima facie* case, and upon the evidence of the instrument itself the plaintiff is entitled to a verdict,

unless there is some other evidence to affect it; yet, when consideration is denied in the answer, then an issue is made upon that point, upon which the plaintiff has the affirmative; and the presumption being *prima facie* only and not conclusive, the burden of proof necessarily rests upon the plaintiff to show a consideration by a preponderance of the whole evidence given on the trial of the issue.

5. BILLS, NOTES AND CHECKS—*Consideration—Burden of Proof—Shifting of Burden.*—There being other evidence on both sides, which has a bearing upon the question of consideration, the burden remains upon the plaintiff upon all the evidence produced, including the note itself and the presumption that arises from it, to establish what he, in the declaration in his writ, has necessarily alleged. The weight of the evidence, or, as it is otherwise expressed, the preponderance of the evidence, may vary from side to side as a trial progresses; but the burden, which rests upon the plaintiff to establish the material averments of his cause of action by the preponderance of all the evidence, never shifts.

6. PRESUMPTIONS AND BURDEN OF PROOF—*Shifting of Burden of Proof.*— The party who maintains the affirmative of an issue carries the burden of proof through the whole case, although he may be aided by such rebuttable presumption of law, or such facts, as would *prima facie* support his contention. His opponents need do no more than counter-balance the presumption or the *prima facie* case.

7. PRESUMPTIONS AND BURDEN OF PROOF—*Meaning of the Term "Burden of Proof"—Shifting of Burden of Proof.*—In many of the cases it is not apparent from the opinions whether the courts used the term "burden of proof" in its strict and technical sense, or in the more common, but inaccurate, use of the phrase, meaning no more than that it would be incumbent on a defendant to offer evidence to impeach and nullify the effect of the plaintiff's *prima facie* case.

8. BILLS, NOTES AND CHECKS—*Presumptions and Burden of Proof—Instructions.*—In an action upon a note the court instructed the jury that the plaintiff proved a *prima facie* case when she introduced her note in evidence and that if defendant sought to defeat recovery by the plaintiff, the burden of proof was on defendant to rebut by a preponderance of the evidence the *prima facie* case so established.
*Held:* No error.

9. APPEAL AND ERROR—*Error in Instructions—Misleading or Erroneous Expressions—Instruction as a Whole not Likely to Mislead.*—A verdict will not be set aside because some of the expressions in an instruction, standing alone, might be regarded as erroneous and misleading, if the instruction as a whole presents the law fairly and correctly and in a manner not likely to mislead the jury.

10. BILLS, NOTES AND CHECKS—*Consideration—Instructions—Appeal and Error—Invited Error.*—In an action on a note the court instructed

the jury that if they believed from the evidence that the maker got what he bargained for while of sound mind, there was no failure of consideration, although what he actually received became of less or no value at all, and in such case the jury should find for the plaintiff. This instruction was objected to because it was predicated upon a failure of consideration, rather than a want of consideration, and secondly, because it disregarded the issue of undue influence. But the same reference to "failure of consideration" as synonymous with "want of consideration" appeared in an instruction offered by the defendant, which was refused by the court, and the defendant is estopped by the doctrine of invited error from complaining of this inaccuracy in form of phraseology. And whether the signature of the maker was obtained by the exercise of undue influence depended, as appeared from the evidence, upon whether the maker was of sound mind at the time the note was given, and this question the instruction left to the jury. Moreover, the testimony was conclusive that the maker was of sound mind. Hence the instruction was not open to these objections.

11. BILLS, NOTES AND CHECKS—*Instructions—Directing Verdict on Partial View of the Evidence—Case at Bar.*—In the instant case, an action on a note, defendant objected to an instruction for the plaintiff on the ground that it directed a verdict for plaintiff upon a partial view of the evidence in that it disregarded the defense of undue influence. It appeared from the evidence in the case that the defense of undue influence rested upon the mental condition of the maker of the note, and the instruction expressly stated, in substance, that the jury were to find for the plaintiff only if they should believe from the evidence that the maker, "with his mental faculties clear, entered into the contract as aforesaid."

*Held:* That there was no merit in the objection.

12. BILLS, NOTES AND CHECKS—*Instructions—Quantum Meruit.*—In the instant case, an action on a note, the note, a contract in writing, expressed on its face an absolute and unconditional obligation to pay the amount stipulated therein for a consideration to be furnished in the future.

*Held:* That an instruction that "no *quantum meruit* is involved in this suit" was correct.

13. BILLS, NOTES AND CHECKS—*Adequacy of Consideration—Parol Evidence.*—Where a note contains in itself the complete contract as to the amount which is to be paid by the maker of the note for the consideration therefor, when the consideration contracted for is furnished, and it has some value, the value of the consideration is irrevocably fixed by the note itself and parol evidence is inadmissible to change the written contract in that particular. Whether the consideration received is equal in value to the sum promised to be paid is immaterial to the validity of the note.

14. CONTRACTS—*Consideration—Adequacy of Consideration.*—Mere inadequacy of consideration is not sufficient to defeat a promise. It is sufficient that the consideration is of some value, and the law will not enter into an inquiry as to the adequacy of the consideration for a promise, but will leave the parties to be the sole judges of the benefits to be derived therefrom, unless the inadequacy of the consideration is so gross as of itself to prove fraud or imposition. Any act done by the promisee at the request of the promisor, however trifling the loss to himself or the benefit to the promisor, is a sufficient consideration for a promise made without fraud and with full knowledge of all the circumstances.

15. PAROL EVIDENCE—*General Statement of the Rule.*—Where the parties have deliberately put their contract in writing, complete in itself and couched in such language as imports a complete legal obligation, parol evidence is not admissible to introduce a term not contained in the writing. The only criterion of completeness is the writing itself. It cannot be proved incomplete by showing an oral stipulation (meaning a prior or cotemporaneous oral stipulation) outside the writing.

16. BILLS, NOTES AND CHECKS—*Parol Evidence—Conditional Promise.*— A negotiable instrument which expresses on its face an absolute promise to pay cannot be cut down into a conditional promise by a contemporaneous parol agreement.

17. BILLS, NOTES AND CHECKS—*Parol Evidence—Total Failure of Consideration.*—The rule that parol evidence is not admissible to contradict or vary an absolute engagement to pay money on the face of the bill or note, does not exclude evidence as between the original parties showing a total or partial failure of consideration.

18. BILLS, NOTES AND CHECKS—*Absence or Failure of Consideration—Person not a Holder in due Course.*—Absence or failure of consideration is matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense *pro tanto*, whether the failure is an ascertained and liquidated amount or otherwise.

19. BILLS, NOTES AND CHECKS—*Consideration—Parol Evidence—Different Value of Consideration from that Fixed by the Note.*—In the absence of fraud and undue influence, parol evidence is never admissible in an action at law upon a note, to fix a value upon the consideration different from the sum promised to be paid therefor as stipulated in the note, where the consideration is of some value. Parol evidence cannot, in such case, be considered so as to fix a different value upon the consideration from that fixed by the note, but must be confined to the subject of whether the consideration contracted for is wholly or partially absent, or has wholly or partially failed, as the case may be.

20. BILLS, NOTES AND CHECKS—*Instructions—Partial Failure of Consideration—Case at Bar.*—Under the evidence in the instant case there was

no question before the jury as to whether there was a partial absence or partial failure of consideration. Therefore, there was no error in refusing an instruction for the defendant as to the effect of a partial absence or partial failure of consideration.

21. UNDUE INFLUENCE—*Shown by Circumstances—Instructions—Abstract Proposition of Law.*—In the instant case, an action on a note, the court refused to instruct the jury "that the circumstances surrounding a transaction may in themselves be sufficient to show that one of the parties to the transaction exercised an undue influence over the other party to the transaction."

*Held:* No error. While stating a correct abstract principle of law, the instruction was too abstract to have been of any practical help to the jury, and, most probably, would have tended to mislead them. Moreover, another and more specific instruction covered the same subject fully and was more helpful to the jury.

22. WITNESSES—*Transactions with Deceased Persons—Uncorroborated Testimony of Plaintiff—Action on Decedent's Note.*—In an action against an executor on a note given by his decedent, defendant objected to a judgment for plaintiff upon the ground that it was founded on the uncorroborated testimony of the plaintiff, contrary to the provisions of section 6209 of the Code of 1919.

*Held:* That there was no merit in this objection, as the note itself and the presumption arising from it aided the plaintiff in carrying the burden of proof. Moreover, the testimony for the defendant as to the soundness of mind of the decedent further corroborated the testimony of plaintiff.

23. BILLS, NOTES AND CHECKS—*New Trial—Verdict Contrary to the Evidence—Testimony of Plaintiff.*—In the instant case, an action upon a note, defendant objected to a verdict for the plaintiff as contrary to the law and the evidence, in that the testimony of the plaintiff was so unreasonable and so inconsistent, that, to say the least, it was not convincing and cast suspicion upon the validity of the note sued on. Though the evidence was conflicting, there was nothing inherently incredible in the testimony of and for the plaintiff.

*Held:* That the credibility and weight to be given the conflicting testimony was for the jury, and there was ample evidence to support the verdict if the jury believed the testimony of and for plaintiff.

Error to a judgment of the Court of Law and Chancery of the city of Roanoke, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action by notice of motion instituted by Mrs. Dyer, the defendant in error (hereinafter called plaintiff), against the plaintiff in error (hereinafter called the defendant, or by name), seeking to recover judgment upon the following negotiable note executed by the decedent, M. H. Earman, in his lifetime, namely:

"Roanoke, Virginia, December 3, 1921.

"$3,500.00.

"On demand for value received I promise to pay to Mrs. A. W. Dyer, or order, without offset, negotiable and payable at the National Exchange Bank of Roanoke, at Roanoke, Virginia, Thirty-five Hundred and no-100 Dollars.

"Homestead and all other exemptions waived by the maker and each endorser.

"If this note is not paid at maturity and is collected by suit or attorney, the maker and endorsers hereof agree to pay, in addition to the amount of this note, ten per cent. collection or attorney's fee, said amount being agreed upon as a reasonable fee for collection. The maker and endorsers hereof waive presentment, demand of payment, protest and notice thereof of this note.

(Signed)   "M. H. Earman.   (Seal)"

On the back of said note is the following endorsement:

"January 18, 1922.

"I recognize demand for payment within note and request extension of time.

(Signed)   "M. H. Earman."

Upon the trial the defendant relied upon the plea of the general issue and the following grounds of defense:

"(1) The note sued on in this action was without

consideration and no recovery can be had thereon against the estate of M. H. Earman, deceased.

"(2) When the note sued on in this action is claimed to have been signed by M. H. Earman, deceased, the said M. H. Earman was old and infirm, and if said note was signed by him, his mental condition was such that he did not realize what he was doing and was not capable of entering into a business transaction.

"(3) When the note sued on in this action is alleged to have been executed by M. H. Earman, the said M. H. Earman was old and infirm, and if said note was signed by him, he was induced to sign the same by undue influence exerted upon him by the plaintiff, or other person acting in the plaintiff's behalf.

"(4) The said M. H. Earman had paid and discharged all obligations due and owing by him to the plaintiff prior to his death, and did not owe the plaintiff anything at the time of his death."

There was a verdict and judgment in favor of the plaintiff for $3,500.00, the amount named in the note, together with interest and the ten per cent. attorney's fee provided for in the note.

On the trial the plaintiff introduced the note sued upon in evidence, proved the signature thereto of the maker, the said decedent, and rested.

Thereupon the defendant himself testified and introduced in his behalf the testimony of a number of witnesses, some of which testimony tended to show that the note was not supported by any valuable consideration whatever—that the note was a gift by the decedent to the plaintiff; and some of which tended to show that the absolute and unconditional promise contained in the note to pay the sum stipulated therein, for the consideration received by the maker of the note, was not an unconditional, but a conditional promise,

namely, a promise to pay that sum only in the event the consideration received should equal or exceed in value the sum promised to be paid, and that, in the event that the consideration received should be less in value than the sum promised to be paid, the promise was to pay merely the actual value of the consideration received.

Thereupon the plaintiff testified in her own behalf, in rebuttal, directly and positively that the note was given for the sum stipulated therein in consideration of the promise and undertaking on her part to furnish the decedent with board and lodging and to nurse him in sickness during the remainder of his life, which promise and undertaking she, in consequence of and in reliance upon the obligation of the note, fully performed in every particular from the date of the note up to the death of the decedent. Then there was rebuttal testimony introduced by the defendant and the testimony of other witnesses introduced by the plaintiff in sur-rebuttal.

The plaintiff was a trained nurse.

The decedent was sick in bed only ten days prior to his death, which occurred on February 6, 1922, and the evidence shows, without conflict, that the plaintiff furnished the decedent with board and lodging, entirely satisfactory to him, and faithfully and efficiently nursed him during the whole of his last illness. There is a sharp conflict in the evidence as to whether the decedent did or did not pay the plaintiff board after the note was given, the plaintiff stating that he did not do so.

The decedent left a will, executed about two months after said note was given, in which, after making certain charges upon his estate and certain bequests of legacies, he gave all the residue of his estate to one

Clutterbuck, a son-in-law. The will was introduced and read in evidence. In his testimony the defendant stated that the plaintiff came to his office a few days after the funeral of the decedent, to-wit, about the 10th of February, 1922, and informed him that she had the note sued on and asked for payment of it; and the defendant testified as follows as to an occurrence on this occasion, namely:

"I told her that if the note was correct it was inconsistent with the old gentleman's will." (Objected to by Mr. Hunt. Overruled). "I reminded her that after these special bequests—which you heard, in fact you heard the whole thing—Mr. Clutterbuck was to have the residue, and that if this note came in, Clutterbuck would be cut out entirely, and some of these other bequests would be practically cut out, because if you people read that note carefully you will find it not only provides for $3,500.00 on its face, but there is a demand made, which makes it draw interest, and they are claiming ten per cent. attorney's fees."

Later, on the trial, the defendant sought to introduce his further testimony to the effect that the gross amount of the decedent's estate inventoried $5,689.46, and that if the note sued on were paid as a debt of the estate, there would not be any residuary estate left, after paying the legacies and charges of administration. On objection by the plaintiff, the court refused to allow this further testimony to be introduced.

The defendant also sought to introduce in evidence a memorandum obtained from the bank in which the decedent kept his account, which was as follows:

"Statement of your Account with
   "The First National Bank,
             "Roanoke, Virginia.
"M. H. Earman.
     "(Memorandum Statement)
       "Previous Balance

| 1921 | | Deposits |
|---|---|---|
| Jan. | 3 | $803.55 |
| June | 3 | 702.00 |
| Dec. | 3 | 84.00 |

"1921.

| " | 1- 6 | $ 5.00 |
|---|---|---|
| | 13 | 5.00 |
| | 20 | 10.00 |
| | 24 | 15.00 |
| | 31 | 10.00 |
| 2- | 7 | 5.00 |
| | 11 | 15.00 |
| | 14 | 5.00 |
| | 25 | 10.00 |
| | 28 | 10.00 |
| 3- | 4 | 13.55 |
| | 11 | 5.00 |
| | 21 | 5.00 |
| | 26 | 15.00 |
| | 30 | 10.00 |
| 4- | 1 | 5.00 |
| | 5 | 5.00 |
| | 9 | 5.00 |
| | 13 | 10.00 |
| | 25 | 15.00 |
| | 27 | 10.00 |
| 5- | 4 | 10.00 |
| | 9 | 55.00 |
| | 17 | 10.00 |

| | | |
|---|---|---|
| 21 | $ | 10.00 |
| 24 | | 5.00 |
| 31 | | 15.00 |
| 6- 4 | | 10.00 |
| 7 | | 5.00 |
| 16 | | 15.00 |
| 29 | | 7.00 |
| 30 | | 15.00 |
| 7- 5 | | 10.00 |
| 19 | | 15.00 |
| 22 | | 10.00 |
| 8- 2 | | 10.00 |
| 2 | | 15.00 |
| 10 | | 5.00 |
| 8-18 | | 5.00 |
| 19 | | 15.00 |
| 22 | | 10.00 |
| 25 | | 5.00 |
| 9- 3 | | 10.00 |
| 3 | | 15.00 |
| 9 | | 5.00 |
| 16 | | 15.00 |
| 16 | | 10.00 |
| 19 | | 5.00 |
| 10- 1 | | 35.00 |
| 1 | | 15.00 |
| 4 | | 5.00 |
| 10 | | 5.00 |
| 17 | | 15.00 |
| 17 | | 10.00 |
| 24 | | 10.00 |
| 11- 1 | | 15.00 |
| 2 | | 5.41 |
| 3 | | 35.61 |
| 10 | | 10.00 |

|       |         |
|-------|---------|
| 16    | $ 15.00 |
| 22    | 10.00   |
| 25    | 5.00    |
| 26    | 5.00    |
| 5     | 15.00   |
| 12- 6 | 15.00   |
| 14    | 10.00   |
| 20    | 15.00   |
| 27    | 5.00    |
| 30    | 10.00   |

|       |          |
|-------|----------|
| 1922  |          |
| 1- 4  | $10.00   |
| 4     | 15.00    |
| 13    | 5.00     |
| 16    | 5.00     |
| 18    | 15.00    |
| 24    | 5.00     |
| 28    | 15.00    |
| 2- 2  | 25.00    |
| 4     | 15.00    |
| 10    | 707.98   |

"Balance to your credit this date, Sept. 20      .00"

The court, on objection of the plaintiff, declined to permit this memorandum to be introduced in evidence.

The court, over the objection of the defendant, gave the following instructions asked for by the plaintiff:

"(1) The court instructs the jury that the plaintiff proved a *prima facie* case when she introduced her note in evidence and that if the defendant seeks to defeat recovery by the said plaintiff, the burden of proof is on the said defendant to rebut by a preponderance of the evidence the *prima facie* case so established and that, in rebutting such, mere inferences or conjectures

are insufficient, and that the defendant must offer affirmative proof of facts to rebut the said *prima facie* case so established to your satisfaction, and if the defendant fails so to do, you should find for the plaintiff according to the terms of the note.

"(2) The court further instructs the jury that if you believe from the evidence that M. H. Earman got what he bargained for while of sound mind, there is no failure of consideration, although what he actually received became of less value or no value at all, and in such case you should find for the plaintiff according to the terms of the note.

"(3) The court instructs the jury that if you believe from the evidence that M. H. Earman, deceased, entered into a contract with Mrs. A. W. Dyer, the plaintiff, whether verbal or written, by the terms of which he was to pay her $3,500.00 for a home for himself the remainder of his life, and executed the note sued on pursuant to said agreement, then that is a valid and binding contract, and the question of what would have been a fair consideration is not for your determination. No *quantum meruit* is involved in this suit. It rested with the people who were mentally capable of entering into a contract, and the court enforces contracts and does not make them, and if you believe from the evidence that M. H. Earman, with his mental faculties clear, entered into the contract as aforesaid, it would be your duty to find for the plaintiff, even though he had lived less than a month from the date thereof."

The defendant asked for the following instructions:

"No. 1.

"The court instructs the jury that while the note offered in evidence by the plaintiff is *prima facie* evidence

of a valuable consideration, yet the jury are further instructed that when evidence is introduced to remove this *prima facie* presumption of a consideration, then the burden is shifted to the plaintiff to show a valuable consideration for the execution of the said note.

### "No. 2.

"The court instructs the jury that if they believe from the evidence that there was no consideration for the note sued on in this action, then their verdict should be for the defendant.

"The court further instructs the jury that if they believe from the evidence that there was only a partial consideration for the execution of the note sued on in this action, or that there was a partial failure of consideration for said note, then they should only find for the plaintiff in such an amount as they may believe from the evidence that there was an actual consideration furnished by the plaintiff for the execution of the note.

### "No. 3.

"The court instructs the jury that when an old man over eighty-six years of age, feeble in health and mind as a result of old age, is away from his relatives and in the custody of persons of no kin, and is induced to enter into a transaction with such persons with whom he is living, and as a result of such transaction, such persons with whom such aged and infirm man is living, acquire a substantial portion of his estate, then the law requires that such persons claiming benefit of such transaction must clearly prove that the contract with such aged and infirm person was fair and reasonable, and supported by an adequate consideration, but the burden is upon the party relying upon the feeble-mindedness to prove it.

## "No. 4.

"The jury are instructed that undue influence is any means employed upon and with a person to induce such person to enter into a transaction which, under the circumstances and conditions by which the person induced to enter into the transaction was surrounded, he could not well resist and which controlled his volition and induced him to do what otherwise he would not have done.

"In connection with the question of whether or not M. H. Earman was induced to execute the note sued on in this action by undue influence, the jury should take into consideration the following:

"(1) Any inadequacy of the consideration for the execution of said note or any circumstances of unfair dealing that may be disclosed by the evidence.

"(2) Any confidential relationship which may have existed between the plaintiff and the said M. H. Earman, and the physical and mental infirmities of the said M. H. Earman resulting from old age as shown by the evidence.

## "No. 5.

"The court instructs the jury that the circumstances surrounding a transaction may in themselves be sufficient to show that one of the parties to the transaction exercised an undue influence over the other party to the transaction."

Of the instructions asked by the defendant the court refused to give No. 5; gave Nos. 1 and 3 as offered; gave the first paragraph of No. 2, as offered; refused to give the second paragraph of No. 2; and gave No. 4, as offered, except that it struck out of the last line of this

instruction, as offered, the words "resulting from old age."

*Hall, Wingfield & Apperson*, for the plaintiff in error.

*A. B. Hunt* and *J. W. McCauley*, for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be disposed of in their order, as stated below.

[1] 1. Was there harmful error in the action of the court in refusing to permit the defendant (after he had already testified, in substance, that if the note was a debt binding on the estate of the decedent, it and the legacies and other charges on the estate would more than consume it, leaving nothing to pass under the residuary clause of the will), to testify more specifically on this subject, by stating what the gross amount of the estate was as inventoried and to repeat what he had already stated, as aforesaid, on the subject?

The question must be answered in the negative.

The court should have permitted the testimony in question to have been introduced. But, as the substance of this testimony was already before the jury, and as we do not find from the record that there was any controversy before the jury over the fact that, if the note sued on is paid out of the estate, there will be nothing left to pass under the residuary clause of the will, it seems apparent that this circumstance was taken into consideration by the jury. We think, therefore, that the error was harmless.

[2] 2. Did the court err in refusing to permit the

memorandum of figures from the bank to be introduced in evidence?

The question must be answered in the negative.

This evidence was sought to be introduced as tending to show that $30.00 board for the month of January, 1922 (being the rate of monthly board the decedent paid the plaintiff prior to the date of the note sued on), was paid to the plaintiff by the decedent after the note sued on was given. But there are four of the items of $15.00 checks paid in January, 1922, which appear on this statement, and there is nothing on the statement to show the dates the checks were given or for what the checks were given; merely the amounts of the checks and the dates of their payment by the bank. So that it is evident that this memorandum could have had no probative value before the jury, and was more likely to mislead than to have been helpful to them.

3. Did the court commit harmful error in giving instruction (1) as offered by the plaintiff?

The question must be answered in the negative.

[3-7] The correct rule on the subject of the burden of proof in actions upon negotiable notes is laid down in 3 R. C. L., sec. 124, pp. 928-9, as follows: "There seems to be no doubt    *    *    *    but that the burden of proof is upon the plaintiff to establish the fact that the instrument was given for a valuable consideration. While the production of the note, with the admission or proof of the signature makes a *prima facie* case, and upon the evidence of the instrument itself the plaintiff is entitled to a verdict, unless there is some other evidence to affect it; yet, when consideration is denied in the answer, then an issue is made upon that point, on which the plaintiff has the affirmative; and the presumption being *prima facie* only and not conclusive, the burden of proof necessarily rests upon the plaintiff to show a considera-

tion by a preponderance of the whole evidence given on the trial of the issue. There being other evidence on both sides, which has a bearing upon the question of consideration, the burden remains upon the plaintiff upon all the evidence produced, *including the note itself and the presumption that arises from it,* to establish what he, in the declaration in his writ, has necessarily alleged. *The weight of the evidence,* or, as it is otherwise expressed, *the preponderance of the evidence, may vary from side to side as a trial progresses;* but the burden, which rests upon the plaintiff to establish the material averments of his cause of action by the preponderance of all the evidence never shifts. The party who maintains the affirmative of an issue carries the burden of proof through the whole case, *although he may be aided by such rebuttable presumptions of law, or such facts, as would prima facie support his contention. His opponents need do no more than counter-balance the presumption or the prima facie case.* * * * In many of the cases it is not apparent from the opinions whether the courts used the term 'burden of proof' in its strict and technical sense, or in the more common, but inaccurate, use of the phrase, *meaning no more than that it would be incumbent on a defendant to offer evidence to impeach and nullify the effect of the plaintiff's prima facie case.*" (Italics supplied.) See to same effect, with respect to civil and criminal cases, 8 C. J. 994-6; 1 Daniel on Neg. Inst. (6th ed.), sec. 164, pp. 219-221; *Tidewater Stevedore Co.* v. *Lindsay,* 136 Va. 88, 116 S. E. 377, and cases therein cited; and *Covington's Case,* 136 Va. 665, 116 S. E. 462, and cases therein cited.

[8] It is apparent, however, from the reading of instruction (1), given at the instance of the plaintiff, that it is addressed solely to that stage of the trial when the plaintiff had introduced no other evidence than the

note and the proof of the signature, and the defendant had introduced all of his evidence, and under this instruction the jury were to consider, first, whether the *prima facie* case made for the plaintiff by the note itself on the question of the existence of a valuable consideration to support it, as well as upon the other questions in the case, had been rebutted, that is, counterbalanced; and if they found from the evidence that the defendant had not done this, the jury need inquire no further, as the plaintiff was entitled to their verdict upon the *prima facie* case made by the note. That this was the meaning of this instruction is set beyond doubt by instruction No. 1, given as asked by the defendant.

There was no error in so instructing the jury.

It is true, as stated in the opinion of the learned trial judge, which appears in the record, that instruction (1) "is inartificially drawn, that part of it which speaks of 'mere inference or conjectures' is obscure, and that the clause which requires the defendant to rebut the *prima facie* case 'to the satisfaction of the jury' is too strong, but the first and chief part of the instruction correctly states the law." The further statement, however, of the trial judge is made in his opinion, that he "did not believe the jury were misled by this instruction," and in this belief we concur.

[9] As we have repeatedly held, a verdict will not be set aside because some of the expressions in an instruction, standing alone, might be regarded as erroneous and misleading, if the instruction as a whole presents the law fairly and correctly and in a manner not likely to mislead the jury. *Kimball* v. *Borden*, 97 Va. 477, 34 S. E. 45. See also *Miller* v. *Newport News*, 101 Va. 432, 44 S. E. 712, and *Gray's Case*, 92 Va. 772, 22 S. E. 858, with respect to the instructions taken as a whole.

[10] 4. Was instruction (2) given for the plaintiff erroneous?

The question must be answered in the negative.

The assignments of error assail this instruction on two grounds; first, because it is predicated upon a failure of consideration, rather than a want of consideration, and secondly, because it assumes the existence of the contract testified to by the plaintiff and disregards the issue before the jury as to the signature of the decedent having been obtained by the exercise of undue influence over him by the plaintiff.

In regard to the first point, we deem it sufficient to say that the same reference to "failure of consideration" as synonymous with "want of consideration" appears in the second paragraph of instruction No. 2, offered by the defendant, which was refused by the court. We think, therefore, that the defendant is estopped by the doctrine of invited error from complaining of this inaccuracy in form of phraseology. *Louisa County* v. *Yancey's Trustee,* 109 Va. 229, 63 S. E. 452; *Levy* v. *Davis,* 115 Va. 814, 80 S. E. 791. Moreover, we think it is obvious, under the circumstances shown in evidence, that the jury were not misled to the prejudice of the defendant, by the instruction, so far as the phraseology just mentioned is concerned.

In regard to the second point, this will be said: Whether the signature of the decedent was obtained by the exercise of undue influence over him by the plaintiff depended, as appeared from all of the evidence in this case, upon whether the decedent was of sound mind at the time the note was given. This question the instruction under consideration left to the jury. Hence the instruction is not open to the aforesaid second objection made to it.

We will add that the evidence was all one way with respect to the soundness of mind of the decedent at the time the note was given, and, indeed, at all times before

and after that time—even the testimony of and for the defendant being to the effect that the decedent was a man of an exceptionally sound mind and of unusual firmness and decision of character. So that in no aspect of it do we feel that the jury could have been misled by the instruction in question.

[11] 5. Was instruction (3) given for the plaintiff erroneous?

The question must be answered in the negative.

The objection urged against this instruction, in the assignments of error, is that it disregards the defense of undue influence and directs a verdict upon a partial view of the evidence upon that issue. The instruction expressly states, in substance, that the jury were to find for the plaintiff only if they should "believe from the evidence that M. H. Earman (the decedent), with his mental faculties clear, entered into the contract as aforesaid."

[12-16] Moreover, the instruction is correct in its statement that "no *quantum meruit* is involved in this suit." The note, a contract in writing, expressed on its face an absolute and unconditional obligation to pay the amount stipulated therein for the consideration therefor (which the parol evidence in behalf of both parties disclosed had none of it been furnished at the time the note was given, but was all to be afterwards furnished). The note contained in itself the complete contract as to the amount which was to be paid by the maker of the note for the consideration therefor. Therefore, when the consideration contracted for was furnished, if it was (which the instructions as a whole left for the jury to determine from the evidence), and it was of some value (as it admittedly was in the instant case), it is elementary that the value of the consideration was irrevocably fixed by the note itself. Parol evidence

was inadmissible to change the written contract in that particular. 3 R. C. L. sec. 127, p. 932; *Idem*, sec. 132, p. 936; *Idem*, sec. 139, p. 948. As said in section 127 of the learned work just cited: "Whether the consideration received is equal in value to the sum promised to be paid, seems not to be material to the validity of a note. In other words, mere inadequacy of consideration is not sufficient to defeat a promise. It is sufficient that the consideration is of some value, and the law will not enter into an inquiry as to the adequacy of the consideration for a promise, but will leave the parties to be the sole judges of the benefits to be derived therefrom, unless the inadequacy of the consideration is so gross as of itself to prove fraud or imposition. * * * Any act done by the promisee at the request of the promisor, however trifling the loss to himself or the benefit to the promisor, is a sufficient consideration for a promise made without fraud and with full knowledge of all the circumstances." And, as said in section 139 of the same volume of the valuable work just cited: "Where parties have deliberately put their contract in writing, complete in itself and couched in such language as imports a complete legal obligation, parol evidence is not admissible to introduce a term not contained in the writing. The only criterion of completeness is the writing itself. It cannot be proved incomplete by showing an oral stipulation" (meaning a prior or cotemporaneous oral stipulation) "outside the writing. Again the principle is well established that a negotiable instrument which expresses on its face an absolute promise to pay cannot be cut down into a conditional promise by a contemporaneous parol agreement."

[17, 18] It is true, as the section of the work last quoted proceeds to set forth, that "* * * the rule that parol evidence is not admissible to contradict or

vary an absolute engagement to pay money on the face
of the bill or note, does not exclude evidence as between
the original parties showing a total or partial failure of
consideration." And the negotiable instruments law,
sec. 28, (Code, sec. 5590) provides as follows: "Absence
or failure of consideration is matter of defense as against
any person not a holder in due course, and partial failure
of consideration is a defense *pro tanto*, whether the
failure is an ascertained and liquidated amount or other-
wise." Further, the decisions are almost innumerable
(too numerous to admit of their review in this opinion),
and not always reconcilable, involving the much de-
bated subject of what parol evidence is admissible upon
the inquiry whether there has been a total or partial failure
of consideration to support a negotiable note. But we
think upon principle and in accordance with the great
weight of authority, that in the absence of fraud and
undue influence, parol evidence is never admissible in
an action at law upon a note, to fix a value upon the
consideration different from the sum promised to be
paid therefor as stipulated in the note, where the con-
sideration is of some value. In other words, in such
case, parol evidence is inadmissible to change the
written contract in that particular. Parol evidence
cannot, in such case, be considered so as to fix a different
value upon the consideration from that fixed by the
note, but must be confined to the subject of whether the
consideration contracted for is wholly or partially ab-
sent, or has wholly or partially failed, as the case may
be.

[20] 6. Did the court err in refusing to give the
second paragraph of instruction No. 2 offered by the
defendant?

The question must be answered in the negative.

Upon the evidence in this case there was, in truth, no

question before the jury as to whether there was a partial absence or partial failure of consideration. Touching the consideration for the note, there were but two questions before the jury, first, what was the consideration which was contracted for, and, secondly, whether the consideration was furnished by the plaintiff in accordance with the contract. The theory of the defendant, on which the refused portion of the restriction in question was based, was predicated upon the initial assumption that the parol evidence introduced by the defendant was admissible to show that the maker of the note did not promise to pay the amount stipulated in the note to be paid for the consideration for the note, but made a different contract, namely, to pay only the actual value of such consideration in the event that it was less than the amount stipulated in the note. In this way only could this theory present the contention that there had been a partial failure of consideration, to-wit, to the extent that the actual value of the consideration furnished by the plaintiff fell short of the amount promised to be paid by the note. The effect of this would have been to have "cut down into a conditional promise by a contemporaneous parol agreement" the absolute promise contained in the note to pay the amount stipulated therein for the consideration. As we have stated above, this could not lawfully be done, because the parol evidence was inadmissible for that purpose. What the court did in refusing the portion of the instruction in question was, in substance, to exclude from the jury the testimony for the defendant tending to show such a parol agreement. For the reasons above stated, in considering the question next preceding that at present before us, we think the court committed no error in so doing.

[21] 7. Did the court err in refusing to give instruction No. 5 asked for by the defendant?

The question must be answered in the negative.

While stating a correct abstract principle of law, the instruction was too abstract to have been of any practical help to the jury in considering the evidence in this case, and, most probably, would have tended to mislead them. Instruction No. 4, asked for by defendant, as modified and given, covered the same subject fully and in a measure more specific and hence more helpful to the jury. And the petition waives any objection to the modification made of the latter instruction as asked.

The only question presented by the assignments of error remaining for our determination is the following:

8. Did the court err in refusing to set aside the verdict and in entering judgment thereon for the plaintiff?

This question must be answered in the negative.

[22, 23] There are two positions taken in the assignments of error and in argument for the defendant on the question under consideration: First, that the judgment under review was founded on the uncorroborated testimony of the plaintiff, contrary to the provisions of section 6209 of the Code; and, secondly, that the verdict was contrary to the law and the evidence, in that the testimony of the plaintiff is so unreasonable and so inconsistent with her course of conduct and previous statements to several witnesses, that, to say the least, it is not convincing and casts suspicion upon the validity of the note sued on.

With regard to the first point, this will be said:

It is true that the plaintiff did not rely solely upon the *prima facie* presumption of consideration arising from the note itself; and it is also true that, as above set forth, the burden of proof rested upon the plaintiff to establish, by a preponderance of the evidence, that the

particular consideration set up in her testimony was the consideration contracted for and was furnished by her accordingly; still, as above set forth, *the whole evidence* included "the note itself and the presumption that arises from it." The particular consideration asserted by the plaintiff was in entire accord with the presumption of consideration arising from the note. The plaintiff was therefore aided in carrying her burden of proof by such presumption. Moreover, the testimony of and for the defendant, showing the soundness of mind and the exceptional independence and firmness of character of the decedent, further corroborated the testimony of the plaintiff. Hence, we think that the judgment cannot be said to have been founded upon the uncorroborated testimony of the plaintiff; so that the statute mentioned has no application.

With regard to the second point, this only need be said:

As appears from what we have said above, the verdict was not contrary to law. The evidence was conflicting, but there was nothing inherently incredible in the testimony of and for the plaintiff; the credibility and weight to be given the conflicting testimony of the witnesses was for the jury; there was ample evidence to support the verdict if the jury believed the testimony of and for plaintiff, rather than that of other witnesses in conflict therewith. Hence, we cannot say that the verdict was contrary to the evidence.

The case must, therefore, be affirmed.

*Affirmed.*