## LINCOLN NAT. LIFE INS. CO. v. BASTIAN.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2773.

R. Kemp Morton, of Charleston, W. Va. (R. F. Baird and F. B. Shoaff, both of Ft. Wayne, Ind., and H. L. Snyder, Jr., of Charleston, W. Va., on the brief), for appellant.

B. J. Pettigrew, of Charleston, W. Va. (U. B. Atkinson, of Charleston, W. Va., on the brief), for appellee.

Before WADDILL and NORTHCOTT, Circuit Judges, and BAKER, District Judge.

BAKER, District Judge. On June 1, 1926, Lincoln National Life Insurance Company, plaintiff, issued and delivered to one John J. Bastian a policy of insurance on his life in the sum of $5,000, with his wife E. Pearl Bastian, the defendant herein, as beneficiary.

Said policy provided for premiums to be paid semi-annually on the 1st days of June and December of each year—$45 each period.

Said policy contained a one-month grace period within which to pay the premiums. The first semi-annual premium of $45 was paid, the receipt of which was acknowledged by the delivery of the policy.

On the 30th day of December, 1926, the insured delivered to the plaintiff a check for $15 and his note for $30 in payment of semi-annual premium, which said note was payable on or before the 1st day of March, 1927, and contained a grace period of 15 days from and after the due date thereof. This note, together with the $15 check, was tendered to the company by the insured with the under-

standing that it should not be binding upon the maker until accepted by the secretary or assistant secretary of the company.

Defendant's Exhibit No. 3 is as follows:

"The Lincoln National Life Insurance Company, Fort Wayne, Indiana.

"Notice of Acceptance of Premium Extension Note."

The exhibit, after setting out the note, due date, etc., states as follows:

"The above described note extending the time for payment of the stated premium is accepted by the Lincoln National Life Insurance Company under the terms and conditions of said note, a copy of which terms and conditions is shown on the reverse side hereof. The receipt of a cash payment in the amount equal to the difference between the amount of the note and the premium extended, is hereby acknowledged.

"The Lincoln National Life Insurance Company Dated 1/3/27 A. J. McCandless, Secretary Countersigned, L. P. Ropa, Home Office Cashier—Authorized collector.".

The terms and conditions of the note referred to provide:

"That if this note is paid on or before the date it becomes due, *or within fifteen days thereafter*, such payment, together with the said cash, if any, will then be accepted by the company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due. * * * That if this note is not paid on or before the date it becomes due, or within fifteen days thereafter, or within fifteen days after the expiration of any extension thereof, it shall thereupon automatically cease to be a claim against the maker and said policy shall become void and shall be deemed to have ceased and terminated on the date when said premium was due and payment thereon forfeited, except as to the right to a surrender value, or a paid-up policy or other rights as in said policy provided. * * *"

Thus, it is clearly shown that said note and check were accepted by the plaintiff as a valid extension of the time of payment and a waiver of forfeiture during such extended period of said second semiannual premium, and upon the acceptance thereof the plaintiff issued and delivered to the insured the extension agreement, providing, among other things, that all rights under said policy should continue as if said premium had been paid when originally due.

A large part of the remaining terms and provisions of said extension agreement relat-

ed to and are devoted to the payment of the note and the effect of the nonpayment thereof. Not a word in that agreement is devoted to the effect of the nonpayment of the check for $15 taken and treated as cash and so stated in said agreement.

How can it be claimed that, after accepting the check as cash and the note of the insured for the balance and remainder of said second semiannual premium and issuing a solemn agreement signed by the duly authorized officials of the company in accordance with the provisions of the policy, the terms thereof can be varied by parol testimony?

The second semiannual premium was due December 1 with 30 days' grace allowed. The adjustment thereof by the check and note on December 30 was in ample time. January 1, 1927, being Sunday, January 2 was observed as New Year's holiday; hence the premium acceptance entries and dates we find to be January 3, 1927.

The note in question was due March 1, 1927; plus 15 days of grace provided therein made the final due date thereof March 15, 1927.

The insured, John J. Bastian, died on the 8th day of March, 1927, which was seven days prior to the final due date of the extension note.

The check for $15 given by the insured to Lincoln National Life Insurance Company on the 30th day of December, 1926 on account of part payment of the premium, was protested for nonpayment on January 18, 1927. Thereupon the insured, John J. Bastian, gave to Lincoln National Life Insurance Company another check in the amount of $16.36 to take up the original one for $15 plus $1.36 protest fees. This second check was paid in due course to the plaintiff, and it still holds the money.

L. P. Ropa, home office cashier and authorized collector, testifies that this extension agreement was within the 30-day period of grace; that he accepted the note and check in payment of that premium; that the insured did pay the amount of the protested check plus the protest fees; and further states that, had the original check for $15 been paid when presented, it would not have been necessary to sign the application for reinstatement alleged by plaintiff to be necessary in this proceeding.

It is true that on the 17th day of January, 1927, the Charleston cashier of the plaintiff company notified the insured at his home address in Montgomery, a point about 26 miles distant, that in his opinion the policy had lapsed and sent to insured a blank applica-

tion for reinstatement thereof. This application was not signed at that time, but later the agent of the plaintiff induced the insured to sign an application for reinstatement.

Query: Had the policy lapsed?

If not, no reinstatement was necessary or required and the policy was in full force at the time of the death of the insured and should be paid to the beneficiary with interest.

If it had lapsed, there should be a decree for the plaintiff insurance company.

It is stipulated by the parties hereto that due proof of the death of the insured was made.

■ To determine whether the policy in question had lapsed, it is only necessary to look to Defendant's Exhibit No. 3 hereinbefore set out. The caption and provisions of that extension agreement speak in unmistakable terms the intent of the parties in relation to this transaction. The receipt of the cash payment of $15 and the note for $30 was therein acknowledged by the plaintiff through its duly authorized officers, and this extension note provided that the insurance should be continued in force until midnight of the due date of that note (which was March 1, 1927), and provided further that, if said note is paid on or before the date the same becomes due, or within 15 days thereafter (which would be March 15, 1927), the policy should remain in full force and effect.

John J. Bastian, the insured, having died 7 days prior to the final due date of the extension note, death having sealed his lips, we think there is no occasion for resorting to parol testimony in this case.

■ No rule of law is better established as a general rule than this, where the writing is plain, definite, and unambiguous, it cannot be varied by parol evidence showing facts which might have the effect of changing the plain intent expressed by the writing. The writing is the repository of what the parties meant, and cannot be varied by extraneous evidence. Northern Assur. Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Watson v. Buckhannon River Coal Co., 95 W. Va. 164, 120 S. E. 390; Smyth v. Brick Row Realty Co., 97 W. Va. 40, 124 S. E. 499; Good v. Dyer, 137 Va. 114, 119 S. E. 277; Warren v. Goodrich Strip & Screen Co., 133 Va. 366, 112 S. E. 687.

How should we construe Exhibit No. 3 hereinbefore quoted?

In the case of New York Life Insurance Co., Plaintiff, v. John W. Eggleston, etc., Administrators, 96 U. S. 572, 24 L. Ed. 841, point 1 of the syllabus is as follows:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; Loveland et al. v. U. S. (D. C.) 18 F. (2d) 585.

■ Courts never favor forfeitures, and this rule applies in a case where the insurer attempts to escape liability upon the theory of a forfeiture for nonpayment of premium. So that very slight evidence will suffice to support a finding that a waiver of a right of forfeiture has occurred. Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; New York Life Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841; Flannagan v. North Western Mutual Life Insurance Co. (Va.) 146 S. E. 353.

In 2 Joyce on Insurance, § 2256, we find as follows:

"A check, draft or note may be accepted under such circumstances as to clearly indicate that a payment of the premium was effected thereby, at least so as to continue the policy in force and preclude a forfeiture, and this is so held even though said check, draft or note be not paid when due or be dishonored."

We find, in the case of Veal v. Security Mutual Life Insurance Co., 6 Ga. App. 721, 65 S. E. 714, a case in many respects like the one before us, the court said:

"If the holder of a policy of life insurance sends to the company on the day the premium is due a check in payment thereof, and when the check is presented at bank, payment is refused because of lack of funds to the credit of the drawer, the company, although it has delivered the premium receipt to the insured, may, by taking proper steps, repudiate the transaction for the legal fraud resulting from the insured's having sent a check without having in bank the funds to meet it, and may enforce a lapse of the policy for non-payment of premium. But if the company, in such a case, after notice that the check has been dishonored, retains it, and instead of repudiating the transaction by returning the check and demanding back its receipt, insisted upon the insured's paying it after the date on which the policy would otherwise have lapsed, a waiver of the punc-

tual payment of the premium in cash results. If the insurance company accepts and retains a note, check, or other interest-bearing obligation for the premium, the policy will not be held to be lapsed or forfeited for non-payment of premium, even though the note or other obligation is not paid at maturity."

Plaintiff in its brief apparently takes the position that it had no authority under the law to waive statutory provisions with reference to the payment of the premium. It is estopped from making any such claim. 14 R. C. L. 1115–1181; 3 R. C. L. (Supplement) 350. National Surety Co. of New York v. T. R. Fox, 54 A. L. R. 458 (174 Ark. 827, 296 S. W. 718). And in the last cited case we find syllabus 4 to be:

"An insurer is estopped from insisting upon a forfeiture of the policy, by any agreement, declaration, or course of action which leads the insured to believe that, by conforming thereto, a forfeiture will not be incurred."

We conclude, as did the learned trial judge below, that under all the circumstances in this case said note and check were accepted by the plaintiff as such extension of said second semiannual premium, and upon the acceptance of which the said plaintiff issued and delivered to the insured an extension agreement; that all rights under said policy continued as if said premium had been paid when originally due; that, said John J. Bastian having died on the 8th day of March, 1927, seven days prior to the final due date of the extension note, said policy did not lapse, and that no necessity existed for a reinstatement thereof; that said policy was in full force and effect at the time of the death of said John J. Bastian, the insured.

The judgment is affirmed.

Affirmed.